DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, Judith Kendzierski, personally and as executrix of the estate of Daniel T. Kendzierski, Daniel E. Kendzierski, and Deborah Nagy, appeal the judgment of the Summit County Court of Common Pleas, which granted summary judgment in favor of appellee, Larry Carney. This Court affirms.
 I. {¶ 2} Appellee is a deputy for the Summit County Sheriff's Office. During the late evening of April 24, 2003, appellee and his wife were at their home watching television, when their dog alerted them to noise on their back deck. Appellee investigated the situation and observed the decedent, Daniel T. Kendzierski, attempting to break into appellee's home through a window. Appellee called out warnings for the decedent to stop, but Kendzierski failed to do so. Appellee then shot Kendzierski with his service firearm. Daniel T. Kendzierski died as a result of the gunshot wound.
 {¶ 3} On November 10, 2003, appellants filed a complaint, in case number CV 2003-11-6575, for wrongful death against appellee, alleging that appellee intentionally and negligently caused Daniel T. Kendzierski's death. Appellants also sought punitive damages. Appellee filed counterclaims against appellants, alleging trespass, intentional destruction of personal property, negligent infliction of emotional distress, intentional infliction of emotional distress, and abuse of process.
 {¶ 4} While that matter was pending, appellee filed a separate complaint, in case number CV 2004-02-0979, for declaratory judgment against the County of Summit and Sheriff Drew Alexander, seeking an order that those defendants had a duty to defend and indemnify appellee in appellants' wrongful death action. The parties submitted numerous stipulations to the court. On August 23, 2004, the trial court issued declaratory judgment in favor of appellee, ordering Summit County and Sheriff Alexander to defend and indemnify appellee in appellants' wrongful death action. As the August 23, 2004 order resolved the matter, case number CV 2004-02-0979 was then terminated from the trial court's docket. Neither the County of Summit nor Sheriff Alexander appealed from the trial court's order.
 {¶ 5} Further, Nationwide Mutual Insurance Company ("Nationwide") filed a separate complaint, in case number CV 2004-12-7098, for declaratory judgment against appellee and appellants. Nationwide, issuer of appellee's homeowner's policy, sought a declaration that appellee was not entitled to a defense by Nationwide in the wrongful death action and that appellee was not entitled to coverage and/or indemnification under the homeowner's policy in regard to the shooting incident at appellee's home on April 24, 2003.
 {¶ 6} On January 26, 2005, the trial court consolidated case number CV 2004-12-7098 (Nationwide's declaratory judgment action) with case number CV 2003-11-6575 (the wrongful death action).
 {¶ 7} On November 30, 2004, appellee filed a motion for summary judgment on appellants' complaint. Appellants responded and appellee replied. On April 27, 2005, the trial court issued its judgment entry, granting summary judgment in favor of appellee on appellants' complaint. On May 2, 2005, Nationwide voluntarily dismissed its complaint for declaratory judgment. On May 9, 2005, appellee voluntarily dismissed his counterclaims. On May 11, 2005, the trial court issued a final, appealable order for the reason that all pending matters had been resolved as a result of the voluntary dismissals. Appellants timely appealed from the trial court's order granting summary judgment in favor of appellee and dismissing appellants' complaint. Appellants set forth three assignments of error for review. As the assignments of error are interrelated, this Court addresses them together.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO APPELLANTS' COMPLAINT FOR WRONGFUL DEATH."
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED IN FINDING THAT THE APPELLEE WAS IMMUNE FROM SUIT PURSUANT TO [R.C.] 2744.02 FOR HIS ACT OF SHOOTING TO DEATH APPELLANTS' DECEDENT[.]"
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED IN FINDING THAT THE APPELLEE'S ACT OF SHOOTING TO DEATH APPELLANTS' DECEDENT WAS JUSTIFIABLE AS `SELF-DEFENSE' OR AS `DEFENSE OF ANOTHER[.]'"
 {¶ 8} Appellants argue that the trial court erred by granting summary judgment in favor of appellee and dismissing appellants' complaint for wrongful death. This Court disagrees.
 {¶ 9} This Court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 10} Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 11} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel. Zimmerman v.Tompkins (1996), 75 Ohio St.3d 447, 449.
 {¶ 12} Appellants argue that the trial court erred by granting summary judgment in favor of appellee, because a genuine issue of material fact exists as to whether the decedent was trying to break into appellee's home on the evening that appellee shot and killed him. Accordingly, appellants argue that a question of fact exists regarding whether appellee believed that he and his wife were in imminent danger. Appellants further argue that the trial court erred by finding that appellee was statutorily immune from liability, because a question of fact exists regarding whether appellee acted in a wanton or reckless manner when he shot the decedent. Finally, appellants argue that the trial court erred by granting summary judgment in favor of appellee, because a genuine issue of material fact exists regarding whether appellee reasonably acted in self-defense and/or in defense of another (his wife). This Court disagrees.
 {¶ 13} Appellee was a deputy with the Summit County Sheriff's Department at the time of the incident. The Sheriff's Department is a political subdivision pursuant to R.C. 2744.01(F). Jones v.Franklin Cty. Sheriff's Dept. (June 21, 1999), 12th Dist. No. CA99-01-004. R.C. 2744.03(A)(6) sets forth the circumstances under which an employee of a political subdivision is immune from civil liability for damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function. Pursuant to R.C.2744.01(C)(1) and (2), police and law enforcement services constitute governmental functions. As a threshold matter, this Court must determine whether appellee was acting within the course and scope of his employment when he shot the decedent, so that he may be statutorily immune from liability.
 {¶ 14} Appellee was off duty and in his own home at the time he shot the decedent, although appellee shot him with his service revolver. Appellee swore in his affidavit that, pursuant to Sheriff Department policy, he is required to respond to a crime in progress at any time, whether he is on or off duty. Accordingly, if appellee shot the decedent during the commission of a crime, then appellee would have been acting within the course and scope of his employment. Appellants failed to present any evidence to rebut appellee's sworn statement that he has a duty to respond within his capacity as a sheriff's deputy even while off duty under such circumstances. In addition, while appellants assert that there is a question of fact regarding whether the decedent was committing a crime when he was shot, appellants have put forth no evidence to that effect. On the other hand, appellee testified at his deposition that he saw a human figure pulling at one of appellee's windows, breaking glass panes, and refusing to stop upon appellee's commands. Under those circumstances, there is no question that the decedent was committing a crime. Accordingly, this Court finds that appellee has established that he was acting within the course and scope of his employment as a deputy sheriff, when he shot the decedent. Appellants failed to meet their reciprocal burden to put forth any evidence in rebuttal. Zimmerman, 75 Ohio St.3d at 449. Therefore, appellee would be immune from liability for shooting the decedent, unless one of the statutory exceptions to immunity applies.
 {¶ 15} R.C. 2744.03(A)(6) states:
"In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
"(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
"(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
"(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term `shall' in a provision pertaining to an employee."
 {¶ 16} There is no allegation that liability has been expressly imposed upon appellee by any section of the Revised Code. Further, appellee has presented unrebutted evidence that his acts were within the scope of his employment and official responsibilities. Accordingly, appellee would be immune from prosecution unless his acts were done with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 17} In regard to the exceptions to statutory immunity, this Court has stated:
"`Malice' is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. * * * `Bad faith' involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another. * * * [W]anton misconduct is the failure to exercise any care whatsoever. * * * [M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor. Such perversity must be under such conditions that the actor must be conscious that his conduct will, in all likelihood, result in an injury." (Internal citations omitted.) Starkey v. Hartzler
(Mar. 26, 1997), 9th Dist. No. 96CA0048.
 {¶ 18} This Court has further stated that "`reckless' conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that this risk is greater than that necessary to make the conduct negligent."Shalkauser v. Medina, 148 Ohio App.3d 41, 2002-Ohio-222, at ¶37, citing Thompson v. McNeill (1990), 53 Ohio St.3d 102,104-105, citing 2 Restatement of the Law 2d, Torts (1965) 587, Section 500.
 {¶ 19} In this case, appellee's wife Deborah Carney testified at her deposition that she heard "scuffling" noises outside her home some time after 11:00 p.m. on April 24, 2003. She testified that she and appellee looked outside, but that something was blocking the security light. Mrs. Carney testified that appellee left their bedroom to investigate and that she heard the sounds of glass breaking and appellee "hollering." She testified that she heard appellee yelling, "What the hell," and that she became "petrified" and "scared to death" at that point. She further testified that she heard what sounded like appellee arguing with someone between instances of breaking glass.
 {¶ 20} Appellee testified at his deposition that about 11:15 p.m. on April 24, 2003, his new puppy acted as though he heard something outside. Appellee testified that he looked out his bedroom window and saw that the home's motion floodlights were on, but the light was blocked by something. Appellee testified that he walked to another bedroom, where he saw a man's figure standing outside the window, breaking glass, and attempting to enter appellee's home. Appellee testified that the man was reaching up, as if trying to pull the window from the frame.
 {¶ 21} Appellee testified that he yelled for the man to get away from the window, that the man hesitated, then continued breaking the glass in an effort to enter appellee's home. Appellee testified that he yelled another warning for the man to get away from the window, that the man hesitated again, then continued to attempt to break into appellee's home. The autopsy toxicology report indicated that the decedent had been "huffing" paint prior to his death.
 {¶ 22} Although appellee averred in his affidavit that he did not see any weapon, he averred that he did not know what the decedent might do once he gained entry to appellee's home. He both averred and testified that he feared for his safety and the safety of his wife, should the decedent gain entry. Appellee testified that he feared for his life and believed that both he and his wife were in imminent risk of physical harm. Appellee averred that, because of his wife's physical ailments, had the decedent entered the home and incapacitated appellee, Mrs. Carney would have been unable to defend herself. Appellee testified that it is Sheriff's Department policy that a deputy may use deadly force when he believes that his life or the life of another is in imminent danger.
 {¶ 23} Appellee testified that he took his service revolver from a cupboard in the bedroom from which he was observing the decedent. He testified that he fired only one shot at the intruder, aiming at center mass, only after he had issued two warnings to the decedent to stop and move away from the window.
 {¶ 24} After the incident, the Summit County Sheriff's Department investigated appellee's role. The Shots Fired Board, by unanimous decision, found that appellee properly discharged his service revolver during the incident at his home on April 24, 2003, and complied with Sheriff's Department policies, procedures and rules pertaining to the use of deadly force. Captain Larry Momchilov of the Detective Bureau of the Summit County Sheriff's Office certified in his affidavit that a true and accurate copy of the Shots Fired Board's decision was attached in support.
 {¶ 25} In addition, Mary Ann Kovach, Chief Counsel of the Criminal Division of the Summit County Prosecutor's Office, certified in her affidavit that a true and accurate copy of a Prosecutor's Office report was attached. In that report, Prosecuting Attorney Sherri Bevan Walsh reviewed her investigation of appellee's use of deadly force against the decedent on April 24, 2003. Prosecutor Walsh reviewed and considered Sheriff Department incident, evidence and investigation reports and photographs; a taped interview with appellee; an interview with Mrs. Carney at the scene; the relevant 911 tape; diagrams and photographs of the scene; the medical examiner's reports; the decedent's criminal history; Chief Counsel Kovach's examination of the incident scene; and measurements of the distance from the deck to the bullet hole in the window and the entrance wound of the decedent to determine the bullet's trajectory. Ms. Walsh concluded that appellee's use of deadly force under the circumstances was justified.
 {¶ 26} Appellants presented the affidavit of D.P. Van Blaricom, an asserted police practices expert from Bellevue, Washington. Based on his review of the incident, he opined that it was unreasonable for appellee to shoot the decedent. However, Mr. Van Blaricom based his opinion, in part, on his determination that the decedent presented no immediate and significant threat of death or serious physical injury to appellee or his wife.
 {¶ 27} This Court has held that a law enforcement officer may use deadly force when "the officer has probable cause to believe that the suspect poses a significant threat of death or physical injury to the officer or others." State v. Pecora (1993),87 Ohio App.3d 687, 690, citing Tennessee v. Garner (1985),471 U.S. 1, 11.
"[T]he reasonableness of any use of force must be judged from the perspective of a reasonable officer on the scene without the use of 20/20 hindsight. The determination of reasonableness must allow for the fact that police officers often are forced to make split-second decisions about the amount of force to use in tense, uncertain, and rapidly evolving situations. Graham v. Connor
(1989), 490 U.S. 386, 396-397, 104 L.Ed.2d 443. A court must avoid substituting its personal notions of proper police procedure for the instantaneous decision made by the officer at the scene." Gammon v. Blakeley (Dec. 4, 1997), 8th Dist. No. 72175.
 {¶ 28} Appellee has presented unrebutted evidence that he had probable cause to believe that an unknown late-night intruder, who aggressively continued to break the glass in appellee's window in an effort to gain entry to appellee's home despite appellee's warnings, posed a significant threat of death or physical injury to appellee and/or his wife. That appellee did not see whether the decedent possessed a weapon does not negate his fears premised on the unrelenting nature of the decedent's attempt to enter the home. Appellants, on the other hand, failed to meet their reciprocal burden to demonstrate that appellee could not have reasonably believed that the decedent posed a significant threat of death or physical injury to appellee and/or his wife. Zimmerman, 75 Ohio St.3d at 449.
 {¶ 29} Appellants have presented no evidence to indicate that appellee's use of deadly force was unjustified. Id. Appellants' expert premised his conclusion that appellee's use of deadly force was unreasonable on a finding, which was irrelevant to the issue before the court. Specifically, Mr. Van Blaricom found that appellee was not at imminent risk of harm. However, the relevant inquiry before the court is whether appellee, from his own perspective, reasonably had probable cause to believe that he and/or his wife were at imminent risk. Appellee presented evidence of such a belief based on the decedent's actions, and appellants failed to present any evidence to rebut appellee's belief. Accordingly, this Court finds that no genuine issue of material fact exists regarding appellee's justification to use deadly force. Consequently, appellee did not act with malice when he shot the decedent.
 {¶ 30} Further, because appellee had probable cause to believe that the decedent posed a significant threat of death or physical injury to him and/or his wife should the decedent have gained entry to the home, this Court finds that no genuine issue of material fact exists regarding whether appellee acted with any dishonest purpose, conscious wrongdoing or ill will. Accordingly, there is no evidence to indicate that appellee acted in bad faith when he shot the decedent. In addition, because appellants have failed to rebut appellee's evidence that he shouted out at least two warnings for the decedent to stop, this Court finds that appellants have failed to demonstrate that appellee failed to exercise any care whatsoever. Accordingly, the trial court did not err in finding that appellee's acts did not constitute wanton misconduct. Finally, because appellants have presented no evidence to indicate that appellee's use of deadly force was unreasonable under the circumstances, appellee's actions did not create an unnecessary risk of physical harm. Accordingly, there is no evidence to indicate that appellee's actions were reckless.
 {¶ 31} Having found that appellee was acting within the course and scope of his employment when he shot the decedent and that appellee's acts did not constitute malice, bad faith, wanton misconduct or recklessness, this Court finds that the trial court did not err in finding that appellee is immune from liability in regard to this incident. Accordingly, as no genuine issue of material fact exists, appellee is entitled to judgment as a matter of law.
 {¶ 32} Because appellee is statutorily immune from liability in this matter, this Court need not consider whether appellee was acting in self-defense or in defense of his wife when he shot the decedent.
 {¶ 33} Appellants' assignments of error are overruled.
 III. {¶ 34} Appellants' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, which granted summary judgment in favor of appellee, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellants.
Exceptions.
Slaby, P.J., Whitmore, J., Concur.