[Cite as *Wells v. Wells*, 2012-Ohio-1392.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

DARREN R. WELLS

    Appellee/Cross-Appellant

    v.

CARRIE T. WELLS

    Appellant/Cross-Appellee

C.A. No.    25557

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2007-01-0035

DECISION AND JOURNAL ENTRY

Dated: March 28, 2012

MOORE, Judge.

{¶1}    Appellant/Cross-Appellee, Carrie T. Wells, appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. Appellee/Cross-Appellant, Darren R. Wells, also appeals from the same judgment. This Court affirms in part, reverses in part, and remands the matter for further proceedings.

I.

{¶2}    Carrie and Darren Wells were married in 1989 and have two children. In the mid to late 1990's, Mr. Wells accepted a job transfer to Australia. Mrs. Wells quit her job and, along with their first child, moved to Australia. While in Australia, their second child was born. In 2000, Mr. Wells was transferred to Michigan. Then, in 2002, Mr. Wells accepted a position with Goodyear Tire & Rubber Co. in Ohio. Mrs. Wells did not return to work, and instead cared for the children and maintained the family residence.

{¶3} In July 2005, Mr. Wells left the marital residence. Since then, his salary and bonuses with Goodyear have increased significantly. After mediation proved to be unsuccessful, Mr. Wells filed a complaint for divorce in the Summit County Domestic Relations Court on January 4, 2007. On March 8, 2007, the trial court issued an agreed judgment entry that designated each party as the residential parent and legal custodian of the parties' two minor children, ordered Mr. Wells to maintain health insurance for the children and Mrs. Wells, and ordered Mr. Wells to provide an accounting of all bonuses and executive performance benefits from Goodyear. Goodyear was added as a party-defendant pursuant to Civ.R. 75(B) on January 25, 2008.

{¶4} On December 23, 2008, a trial commenced to determine the grounds for divorce, the marriage termination date, and the spousal support amount. On May 4, 2009, the trial court issued a judgment entry adopting the shared parenting plan agreed to by the parties on April 10, 2008, ruling that the de facto termination date of the marriage was July 1, 2005, awarding Mrs. Wells 72 months of spousal support in the amount of $20,000 per month, and giving Mr. Wells credit for "monies previously paid."

{¶5} On June 1, 2009, Mrs. Wells filed a notice of appeal. On July 8, 2009, this Court dismissed that appeal for lack of a final appealable order. We noted that the trial court's entry failed to mention division of property or child support.

{¶6} On October 15, 2009, Mrs. Wells filed a motion to modify the duration of spousal support and the de facto termination date, and requested findings of fact and conclusions of law. The motion was denied on February 3, 2009. On October 27, 2009, Mrs. Wells served a subpoena duces tecum upon Goodyear seeking Mr. Wells' financial information. On November

18, 2009, the trial court quashed the subpoena duces tecum and issued a protective order prohibiting Mrs. Wells from any further discovery attempts from Goodyear.

{¶7} A trial on all remaining issues was held on April 20, 2010. Mrs. Wells filed an affidavit of disqualification of the trial judge, Judge Hayes, with the Ohio Supreme Court on July 2, 2010. The request was denied on July 27, 2010. On July 28, 2010, the trial court issued a final divorce decree dividing the marital property and establishing child support.

{¶8} Mrs. Wells timely filed a notice of appeal. She raises seven assignments of error for our review. Mr. Wells filed a cross-appeal and raises two assignments of error for our review.

## II.

### MRS. WELLS' ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ESTABLISHING THE DE FACTO MARRIAGE TERMINATION DATE AS JULY 1, 2005.

{¶9} In her first assignment of error, Mrs. Wells argues that the trial court erred when it established the de facto marriage termination date of July 1, 2005. We do not agree.

{¶10} "[T]he decision to use the final hearing date or another date when valuing property in a divorce action is a discretionary matter. The decision must reflect an unreasonable, arbitrary or unconscionable attitude before this [C]ourt will reverse." *Budd v. Budd*, 9th Dist. No. 25469, 2011-Ohio-565, ¶ 8, quoting *Schrader v. Schrader*, 9th Dist. No. 2664-M, 1998 WL 46757, *3 (Jan. 21, 1998). *See also Berish v. Berish*, 69 Ohio St.2d 318, 319-20 (1982) (applying an abuse of discretion standard when establishing the duration of the marriage for purposes of valuation).

{¶11} Under R.C. 3105.171(A)(2)(a), the phrase "during the marriage" is defined as "the period of time from the date of the marriage through the date of the final hearing in an action for divorce[.]" If the court determines that using those dates would be inequitable, the court "may select dates that it considers equitable in determining marital property." R.C. 3105.171(A)(2)(b). However, "we have previously noted that the statute 'creates a presumption that the proper date for termination of marriage is the date of the final divorce hearing.'" *Budd* at ¶ 8, quoting *Bowen v. Bowen*, 132 Ohio App.3d 616, 630 (9th Dist.1999), quoting *Kohler v. Kohler*, 9th Dist. No. 96CA006313, 1996 WL 455850, *5 (Aug. 14, 1996). A trial court should only impose a de facto termination where the evidence "clearly and bilaterally shows that it is appropriate based on the totality of the circumstances." *Boggs v. Boggs*, 5th Dist. No. 07 CAF 02 0014, 2008-Ohio-1411, ¶ 66. "Generally, trial courts use a de facto termination of marriage date when the parties separate, make no attempt at reconciliation, continually maintain separate residences, separate business activities and/or separate bank accounts." *Eddy v. Eddy*, 4th Dist. No. 01CA20, 2002-Ohio-4345, ¶ 24, citing *Gullia v. Gullia*, 93 Ohio App.3d 653, 666 (8th Dist.1994).

{¶12} The trial court in this case concluded that a de facto termination date was appropriate because "the parties separated in June 2005, and from that time have lived separate and apart; [] the parties have been residing in separate residences, maintaining separate households, have not attempted to reconcile their marriage, have not engaged in any marital relations, and have not carried on a social relationship between them. Both parties testified that there has been a complete absence of mutually supportive roles between them from June 2005 to the present." In addition, "[t]he evidence revealed that after the parties' separation, the parties have had separate financial accounts, and have been paying their own respective expenses."

"After their separation in June 2005, both parties have engaged in efforts to terminate their marriage, including but not limited to retaining counsel and engaging in the within proceedings, and executing a Shared Parenting Plan. Further, after separation in June 2005, [Mr. Wells] has had a continuous and intimate relationship with a significant other." The trial court concluded "that based on the totality of the circumstances, that it would be inequitable to utilize the date of the final hearing in this matter as the date of the termination of the parties' marriage." It determined that, as a matter of law, the marriage ended on July 1, 2005.

{¶13} On appeal, Mrs. Wells initially argues that the trial court erred when it failed to explain its reasons for choosing a de facto date. The language above indicates that the trial court explained its reasons for choosing the de facto date, so this argument is without merit.

{¶14} Next, Mrs. Wells argues that the trial court made comments that indicate that it had "improperly predetermined that it would not use the statutory presumed date." Specifically, the trial court said, "My job is to determine the date that this marriage ends[.]" "I'll decide which date it is and everybody will go away equally unhappy." Mrs. Wells argues that these comments indicate that the trial court did not follow the statutory presumption. The record indicates that these comments were made at a hearing the parties had requested for the purpose of determining the termination date of the marriage. The comments, while perhaps injudicious, do not demonstrate that the trial court failed to follow the statutory presumption. They could be interpreted to mean that the court would equitably make its determination in such a way as not to favor either party. As stated above, the journal entry indicates that the trial court considered the appropriate factors, and as a whole, it does not demonstrate an abuse of discretion.

{¶15} Mrs. Wells further argues that the trial court "did not consider the objective evidence that showed a bilateral agreement to continue the marriage until the presumed

termination date." She appears to argue that the trial court erred in relying "almost exclusively upon Mr. Wells' unilateral actions that caused the parties to stop functioning as a marital unit[.]" Trial courts must not "put undue emphasis on [a parties'] unilateral actions." *Day v. Day*, 40 App.3d 155, 158 (10th Dist.1988), (concluding that "the record contains no clear evidence that would support a de facto termination on September 1, 1984, the date plaintiff vacated the marital residence, as plaintiff's unilateral action is insufficient herein to achieve that end."). The trial court indicated that, in addition to the husband's departure from the martial home, it also looked at the fact that the parties had been residing in separate residences, maintaining separate households, had not attempted to reconcile their marriage, had not engaged in any marital relations, and had not carried on a social relationship between them. Both parties testified that there had been a complete absence of mutually supportive roles between them from June 2005 to the present. Since the separation, both parties engaged in efforts to terminate their marriage, including but not limited to retaining counsel, attending mediation, engaging in the within proceedings, and executing a Shared Parenting Plan. Based on the trial court's consideration of all of these factors, we conclude that Mrs. Wells has not demonstrated that the trial court put undue emphasis on Mr. Wells' unilateral actions, or that it abused its discretion.

{¶16} Additionally, Mrs. Wells argues that the trial court ignored "objective evidence of a continuing and substantial financial entanglement between Mr. and Mrs. Wells." However, she fails to direct this Court to any such evidence. As we have repeatedly held, "[i]f an argument exists that can support this assignment of error, it is not this court's duty to root it out." *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *8 (May 6, 1998). As such, this argument is without merit.

{¶17} Next, Mrs. Wells argues that "[t]he financial evidence showed the parties' objective bilateral agreement to have a continuing relationship until the trial date." Specifically, she argues that "the parties' joint use of funds in joint checking accounts" shows a "continuing financial entanglement." She directs this Court to Plaintiff's Exhibit 37 to support this contention. This exhibit was admitted at trial on December 23, 2008, by Mr. Wells to show the payments he had made to Mrs. Wells throughout the divorce proceedings. Mrs. Wells did not object to its admission, and although she declined to do so, she had the opportunity to cross-examine Mr. Wells about the information contained within. Instead, on October 15, 2009, Mrs. Wells filed a motion to modify arguing that the transactions in the exhibit showed "Mr. Wells' continued use of the funds" in the joint account. In the motion she lists numerous transactions purported to have been made by Mr. Wells only for his personal use. She attached no affidavit or exhibits to support this argument. The motion was subsequently denied on February 3, 2010. At the April 20, 2010 hearing, Mrs. Wells attempted to cross-examine Mr. Wells again on this exhibit. The trial court sustained Mr. Wells' objections because Mrs. Wells' prior counsel previously had the opportunity to raise objections regarding the exhibit, as well as to cross-examine Mr. Wells about the exhibit. The trial court acknowledged that it had previously made a finding with regard to the exhibit and had determined the credit Mr. Wells should receive for previous spousal support payments. Mrs. Wells did not offer any evidence at the April 20, 2010 hearing to support her arguments. On appeal, she simply directs this Court to the exhibit and argues that it shows financial entanglement. To the contrary, the statements simply show funds going in and out of the account. Mr. Wells testified that he deposited the $10,000 support payments into the account each month. He attached copies of the checks to support this contention. There is no other evidence to demonstrate the nature of other transactions, or which

party may have authorized them. The facts indicate that the couple utilized a joint account as a vehicle for Mr. Wells to pay Mrs. Wells support payments. Although Mrs. Wells contends that the statements demonstrate Mr. Wells' personal use of the account as well, this contention, without further evidence, is not evidence of continued financial entanglement, nor does it demonstrate that the trial court abused its discretion in determining the de facto termination date.

{¶18} Mrs. Wells argues that the filing of joint tax returns for 2006 through 2008 demonstrates financial entanglement as well. The record indicates that it was Mrs. Wells who requested the filing of joint tax returns because it would be a mutual benefit for the parties. The Court subsequently ordered Mr. Wells to comply. This does not demonstrate that the parties were in a bilateral agreement to remain financially dependent upon one another, but rather that they sought out the most financially beneficial method of reporting their income. Finally, Mrs. Wells argues that her use of the joint credit cards until July 2007 demonstrates financial entanglement. The record indicates that Mr. Wells filed a motion to show cause against Mrs. Wells for the improper charges on the credit card. Again, this is not sufficient evidence to demonstrate an abuse of discretion by the trial court.

{¶19} Finally, Mrs. Wells argues that the trial court "impermissibly ignored Mrs. Wells' substantial contributions to the development of Mr. Wells' career." She directs this Court to *Schrader,* 1998 WL 46757, which concluded that the trial court did not abuse its discretion by terminating the marriage as of the final hearing date though the value of the husband's business increased significantly between the separation date and the trial date. *Id.* at *3-4. There is no question here that Mrs. Wells contributed to the couples' success. However, by reference to that fact, she has not demonstrated that the trial court abused its discretion in determining the de facto date of termination. The record indicates that the trial court properly considered the necessary

factors and concluded that it would be inequitable to utilize the presumed statutory date of the final hearing. Mrs. Wells' first assignment of error is overruled.

## MRS. WELLS' ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO RECONSIDER AND ALTER ITS MAY 4, 2009 JUDGMENT ENTRY, WHICH ESTABLISHED JULY 1, 2005 AS THE DE FACTO MARRIAGE TERMINATION DATE.

{¶20} In her second assignment of error, Mrs. Wells reiterates the arguments discussed in the first assignment of error. For the reasons stated above, the assignment of error is overruled.

## MRS. WELLS' ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY MAKING AN AWARD OF SPOUSAL SUPPORT WITHOUT FIRST MAKING AN EQUITABLE DIVISION OF THE MARITAL PROPERTY.

{¶21} In her third assignment of error, Mrs. Wells argues that the trial court erred by making an award of spousal support without first making an equitable division of the marital property. We do not agree.

{¶22} This Court reviews a trial court's award of spousal support under an abuse of discretion standard. *Brubaker v. Brubaker*, 9th Dist. No. 22821, 2006-Ohio-1035, ¶ 7, citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). However, "[w]hen reviewing whether a trial court correctly interpreted and applied a statute, an appellate court employs the de novo standard as it presents a question of law." *Nigro v. Nigro*, 9th Dist. No. 04CA008461, 2004-Ohio-6270, ¶ 6, citing *Akron v. Frazier*, 142 Ohio App.3d 718, 721 (9th Dist.2001).

{¶23} Under R.C. 3105.171(C)(3), trial courts must "provide for an equitable division of marital property * * * prior to making any award of spousal support to either spouse under section 3105.18 of the Revised Code and without regard to any spousal support so awarded."

Furthermore, R.C. 3105.18(B) provides that trial courts may award reasonable spousal support to either party "upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code[.]"

{¶24} Thus, the trial court was required to make an equitable division of the marital property under R.C. 3105.171 before it could make an award of spousal support. Mrs. Wells argues that the trial court did not do so. The record indicates that in the May 4, 2009 judgment entry, the trial court relied on the parties' representations that the only matter before it was spousal support and the duration of the marriage. Mrs. Wells timely filed a notice of appeal, and the appeal was subsequently dismissed because the order did not contain property division or child support. On remand, the trial court addressed the issues of property division and child support. At the April 20, 2010 hearing, Mrs. Wells acknowledged that "R.C. 3105.18 requires the Court to divide property first before it sets spousal support." The trial court noted that it had "just done the property division" and that it would now "do spousal support." Later in the hearing, it also acknowledged that Mrs. Wells had requested an increase in spousal support from the May 4, 2009 entry, and the trial court stated that it would "take that under consideration." It is apparent from the record that the trial court divided the property, and subsequently reconsidered the issue of spousal support. Upon reconsideration, it chose to reimpose the previously ordered spousal support amount, and in doing so elected to incorporate the prior entry. Civ.R. 75(F)(2) allows the court to incorporate into the judgment "issues of * * * spousal support * * * [that] have been finally determined in orders, previously entered by the court[.]"

{¶25} We conclude that the trial court properly determined the division of property prior to making an award of spousal support, in accordance with R.C. 3105.171(C)(3) and 3105.18(B). Accordingly, Mrs. Wells' assignment of error is overruled.

**MRS. WELLS' ASSIGNMENT OF ERROR IV**

THE TRIAL COURT ERRED BY FAILING TO VALUE AND THEN EQUITABLY DIVIDE THE MARITAL AND SEPARATE PROPERTY.

{¶26} In her fourth assignment of error, Mrs. Wells argues that the trial court erred by failing to value and then equitably divide the marital and separate property. We do not agree.

{¶27} This Court has held that "[i]n order to formulate an equitable division of property in divorce proceedings, the trial court should first determine the value of the property." *Schiesswohl v. Schiesswohl*, 9th Dist. No. 21629, 2004-Ohio-1615, ¶ 29, citing *Eisler v. Eisler*, 24 Ohio App.3d 151, 152 (11th Dist.1985). Without findings of value for the property, an appellate court is unable to review the equality of the division of property. *Eisler* at 152.

{¶28} On appeal, Mrs. Wells argues that "the trial court did not make a finding of the fair market value of each item of marital property and of the separate property of the parties." She only provides this court with two examples, so we will limit our review accordingly. *See generally* App.R. 16(A)(7).

{¶29} First, Mrs. Wells directs this court to the "bonuses, incentives, and executive performance pay earned by the husband [on or before] July 1, 2005." (Emphasis removed). She argues that she was "deprived of $151,783.00" of these monies. She does not indicate how she arrived at this figure, so we are left to divine how she arrived at this amount. She provides a citation to the trial court's judgment entry ordering that "all bonuses, incentives, and executive performance pay earned by the husband after July 1, 2005 shall be his property, free and clear from any claim of the wife." She provides no additional guidance, citations, or arguments with regard to this portion of the assignment of error. As we have repeatedly held, "[i]f an argument exists that can support this assignment of error, it is not this court's duty to root it out." *Cardone*, 1998 WL 224934, at *8. As such, this portion of the assignment of error is overruled.

{¶30} Second, Mrs. Wells argues that the trial court failed to identify and value the source of the funds used by Mr. Wells to purchase his Hudson, Ohio dwelling. The trial court determined that, because the home was purchased after the de facto termination date of the marriage, it was separate property and not subject to equitable division. On appeal, Mrs. Wells argues that the source of funds for the down payment "was an issue" and that it "was Mr. Wells' burden to establish that the funds used for the down payment to purchase the Hudson dwelling were separate property."

{¶31} At the April 20, 2010 hearing, the parties discussed the division of the marital property. The court acknowledged that the parties had previously submitted assets to be divided, including two pieces of real estate. However, because the trial court selected a July 1, 2005 de facto termination date, Mr. Wells argued that the Hudson dwelling should not be listed as a marital asset because it was acquired after that date. The trial court advised the parties that they could argue the assets each believed should be divided, and that it would make the final determination. On the record, the parties discussed the various assets that should be divided. Mrs. Wells never raised the issue of the down payment for the Hudson dwelling. The trial court ordered the parties to submit a supplemental judgment entry addressing the division of property. The court asked the parties if there was any division of property that had not been completed. It also asked the parties if there were any assets that had been "missed." Mrs. Wells acknowledged that some of the values needed to be verified, but she did not complain that any asset had been overlooked.

{¶32} The parties ultimately decided to submit a proposed judgment entry. Mr. Wells' proposed entry stated that he was to receive the Hudson property. On May 10, 2010, Mrs. Wells filed objections to the proposed entry and argued that Mr. Wells "must provide information

about the financing and purchase of" the Hudson property. In his response, Mr. Wells argued that "[it] cannot be disputed that this is [] separate property, given this Court's ruling in regard to the termination date of the marriage as July 1, 2005. Therefore, such a position and the records discussed are irrelevant; and merely made for harassment and to place an undue burden upon [Mr.] Wells." On July 28, 2010, the trial court issued a final divorce decree. In it, the court found that Mr. Wells' Hudson residence "was purchased after the de facto date of the termination of the marriage." It further ordered that Mr. Wells was to receive the Hudson property.

{¶33} On appeal, Mrs. Wells argues that Mr. Wells failed "to establish that the funds used for the down payment to purchase the Hudson dwelling were separate property." However, this issue was never properly raised before the trial court. Although she argued that Mr. Wells "must provide information about the financing and purchase of" the Hudson property, she never argued that the funds were marital property. At the hearing, the trial court asked the parties if there were any assets that had not been discussed during the division of property, and this issue was not raised. This Court has held that "an appellate court will not consider as error any issue a party was aware of but failed to bring to the trial court's attention" at a time when the trial court might have corrected the error. *State v. Dent*, 9th Dist. No. 20907, 2002-Ohio-4522, ¶ 6. *See also Stefano & Associates, Inc. v. Global Lending Group, Inc*., 9th Dist. No. 23799, 2008-Ohio-177, ¶ 18 ("It is axiomatic that a litigant who fails to raise an argument in the trial court forfeits his right to raise that issue on appeal"). The objection to the proposed entry was essentially an evidence request, which should have been executed prior to trial or upon cross-examination. Having failed to properly raise the issue before the trial court, Mrs. Wells has forfeited the right to raise it on appeal. Accordingly, her fourth assignment of error is overruled.

**MRS. WELLS' ASSIGNMENT OF ERROR V**

THE TRIAL COURT ERRED AND VIOLATED [MRS. WELLS'] DUE PROCESS RIGHTS IN DETERMINING THE NUMBER OF MONTHS TO BE CREDITED AGAINST THE TOTAL NUMBER OF MONTHS ALLOCATED AS THE DURATION OF SPOUSAL SUPPORT.

{¶34} In her fifth assignment of error, Mrs. Wells argues that the trial court erred in determining the number of months of temporary spousal support to be credited to the duration of the remaining spousal support. We do not agree.

{¶35} A trial court's decision concerning spousal support may only be altered if it constitutes an abuse of discretion. *See Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990). An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶36} R.C. 3105.18(C)(1)(a) through (n) provides the factors that a trial court is to consider in determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, terms of payment, and duration of spousal support:

(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage; (h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education,

training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable.

{¶37} Here, the trial court ordered spousal support to Mrs. Wells in the amount of $20,000 per month for 72 months. The court also gave credit to Mr. Wells for 30 months of spousal support for "the monies [that he] previously paid," thus reducing the spousal support payments term to 42 months. Mrs. Wells argues that such a credit was an abuse of discretion by the trial court, and that it "is precisely the kind of look-back that this Court found to be a violation of due process and reversible error."

{¶38} Initially, we will address the trial court's ability to grant the 30-month credit to Mr. Wells. In *Zimon v. Zimon*, 9th Dist. No. 04CA0034-M, 2005-Ohio-271, the wife was awarded temporary spousal support during the proceedings and spousal support in the final decree. *Id.* at ¶ 3, 13. On appeal, the husband argued that the trial court erred in its reliance on the date of the divorce decree rather than the date of separation, and we agreed. *Id.* at ¶ 28-30. He further argued that the trial court erred in failing to consider the temporary spousal support payments made after the date of separation. *Id.* at ¶ 28. This Court determined "that it would be inequitable to ignore the temporary support paid during the pendency of the proceeding when deciding the duration of the support award[.]" *Id.* at ¶ 30. We further recognized "that such an omission would skew the basis for setting the duration of such awards and have the negative policy effect of encouraging the receiving spouse to prolong the proceedings in order to elongate the actual period of spousal support." *Id.* Here, as in *Zimon*, the date of separation was used as the de facto termination date, but the trial court did consider temporary spousal support. As

such, it was not an abuse of discretion for the trial court to credit Mr. Wells with the temporary spousal support payments made after this date.

{¶39} Mrs. Wells directs this Court to *Ostmann v. Ostmann*, 168 Ohio App.3d 59, 2006-Ohio-3617 (9th Dist.), to support her argument that the trial court's "look-back" was "a violation of due process and reversible error." Specifically, she argues that the trial court should not have been permitted to "retroactively reduce a temporary support obligation that it imposed in a prior temporary order[.]" This argument is without merit.

{¶40} In *Ostmann*, the final divorce decree increased the father's child support obligations and retroactively applied that increase to the start of the trial. *Id.* at ¶ 43. This effectively created an immediate arrearage of approximately $3,575. *Id.* The decree "essentially created an obligation * * * to pay an additional sum of money, after the fact, and then penalized him for not having paid it." *Id.* at ¶ 44. We concluded that this violated the father's due process rights. *Id.* at ¶ 45.

{¶41} The trial court here, however, did not retroactively reduce the temporary support obligations. It merely took into consideration the amount of monies already paid by Mr. Wells following the de facto termination date of the marriage. As we determined above, such consideration was not an abuse of the court's discretion under the circumstances. Mrs. Wells' fifth assignment of error is overruled.

### MRS. WELLS' ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS CHILD SUPPORT AWARD BY FAILING TO ADHERE TO THE PROPER STANDARD AND BY FAILING TO ALLOW MRS. WELLS TO PRESENT FULL AND COMPLETE EVIDENCE OF THE NEEDS AND STANDARD OF LIVING OF THE PARTIES AND THE CHILDREN.

{¶42} In her sixth assignment of error, Mrs. Wells argues that the trial court erred in its child support award when it failed to consider, and disallowed Mrs. Wells to present evidence of, the needs and standard of living of the parties and the children. We agree.

{¶43} "The decision to admit or exclude evidence lies in the sound discretion of the trial court. Absent an issue of law, this Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review." (Internal citations omitted). *Jones v. Jones*, 9th Dist. No. 25468, 2011-Ohio-4393, ¶ 7. When applying the abuse-of-discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶44} R.C. 3119.04(B) governs child-support calculations when the combined gross income of the parents exceeds $150,000 per year, providing that:

> If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, *shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents*. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings.

(Emphasis added.)

{¶45} In determining an appropriate amount of support, the statute directs the trial court to consider the needs and standard of living of both the "children who are the subject of the child support order and of the parents." R.C. 3119.04(B). Additionally, many courts have found that "when the income of the parents is greater than $150,000, the appropriate standard for the

amount of child support is 'that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued.'" *Berthelot v. Berthelot*, 154 Ohio App.3d 101, 2003-Ohio-4519, ¶ 24 (9th Dist.), quoting *Birath v. Birath*, 53 Ohio App.3d 31, 37 (10th Dist.1988); *see also Maguire v. Maguire*, 9th Dist. No. 23581, 2007-Ohio-4531, ¶ 12.

{¶46} In determining appropriate amounts of child support under R.C. 3119.04(B), courts routinely specify that they have considered the expenses of the parents and the standard of living the parents and children enjoyed prior to the separation and divorce, as well as the current standard of living of the parents. *See Bajzer v. Bajzer*, 9th Dist. No. 25635, 2012-Ohio-252, ¶ 6; *Barone v. Barone*, 6th Dist. No. L-07-1336, 2008-Ohio-5793; *Bunkers v. Bunkers*, 6th Dist. No. WD-06-030, 2007-Ohio-561, *Kendall v. Kendall*, 6th Dist. No. OT-04-004, 2005-Ohio-1777; *Cho v. Cho*, 7th Dist. No. 03 MA 73, 2003-Ohio-7111; *Wolfe v. Wolfe*, 10th Dist. No. 04AP-409, 2005-Ohio-2331.

{¶47} In *Moore v. Moore*, 182 Ohio App.3d 708, 2009-Ohio-2434 (3d Dist.), the magistrate refused to allow the mother to present testimony about the children's standard of living, as well as the standard of living of both parents, and the family as a whole. *Id.* at ¶ 18. The Third District concluded that the trial court erred in refusing to allow the testimony because "the statute requires that the trial court consider the needs *and* standard of living of the child." *Id*. Thus, the mother should have been permitted to present testimony about the standard of living enjoyed by the children, as well as the parents. *Id*. The Third district further concluded that the trial court abused its discretion in excluding this evidence. *Id*.

{¶48} Here, the trial court refused to allow Mrs. Wells to present testimony about the children's standard of living, as well as Mr. Wells' standard of living. During the hearing, Mr. Wells was asked about the furnishings in his home. The trial court sustained Mr. Wells'

objection. Mrs. Wells argued that "it goes to the lifestyle that the children would have enjoyed if the couple had stayed married." The trial court ordered her to proceed to the next question. Later, the trial court refused to allow Mr. Wells to answer questions regarding his wishes for the children's education, specifically if he preferred that the children remain in private schooling. The trial court replied, "I don't care what school they go to. I've said that before." Mrs. Wells argued that this was important to know for child support purposes. The trial court ordered her to "move on" and to stop arguing "every question [or] we'll be here forever." Because the trial court was required to consider the standard of living that the children would have enjoyed had the parties' marriage continued, we conclude that the trial court abused its discretion in excluding this evidence. *See also Berthelot,* 2003-Ohio-4519, at ¶ 24-25 (concluding that the trial court abused its discretion by failing to consider the amount necessary to maintain the standard of living the children would have had).

{¶49} Accordingly, Mrs. Wells' sixth assignment of error is sustained.

### MRS. WELLS' ASSIGNMENT OF ERROR VII

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY QUASHING THE SUBPOENA DUCES TECUM AND PROHIBITING FURTHER DISCOVERY FROM GOODYEAR.

{¶50} In her seventh assignment of error, Mrs. Wells argues that the trial court erred when it quashed the subpoena duces tecum which prohibited further discovery from Goodyear. We do not agree.

{¶51} A trial court enjoys broad discretion in the regulation of discovery proceedings. *Manofsky v. Goodyear Tire & Rubber Co.*, 69 Ohio App.3d 663, 668 (9th Dist.1990). S*ee also State ex rel. The V. Cos. v. Marshall*, 81 Ohio St.3d 467, 469 (1998). Therefore, absent an abuse of discretion, an appellate court will not overturn the trial court's ruling on such matters.

*Marshall* at 469. An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore*, 5 Ohio St.3d at 219. "Despite this broad discretion held by trial courts in discovery matters, trial courts must consider the interests of parties seeking discovery and the interests of parties and nonparties resisting discovery." *Martin v. The Budd Co.,* 128 Ohio App.3d 115, 119 (9th Dist.1998).

{¶52} The record indicates that the trial court granted Mrs. Wells' motion to add Goodyear as a party-defendant pursuant to Civ.R. 75(B) on January 25, 2008. On October 27, 2009, Mrs. Wells served a subpoena duces tecum upon Goodyear Tire & Rubber Co. seeking Mr. Wells' financial information. Mr. Wells filed a motion to quash the subpoena because (1) Mrs. Wells had previously requested and received the income information, and (2) because Goodyear was a party to the action, the subpoena was improper and in violation of Civ.R. 45. The trial court granted the motion to quash the subpoena on November 18, 2009.

{¶53} Civ.R. 45(A) provides that "[a] subpoena may not be used to obtain * * * the production of documents by a party in discovery. Rather, * * * documents or electronically stored information may be obtained from a party in discovery only pursuant to Civ.R. 34." Thus, the subpoena was not the proper procedure to request the financial information.

{¶54} Accordingly, her seventh assignment of error is overruled.

## MR. WELLS' ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DISMISSING AND DENYING [MR. WELLS'] MOTIONS RELATING TO PARENTING ISSUES.

{¶55} In Mr. Wells' first assignment of error on cross-appeal, he argues that the trial court erred by dismissing and denying his motions relating to parenting issues. We do not agree.

{¶56} "This [C]ourt will not overturn a lower court's determination in a contempt proceeding absent an abuse of discretion." *Malson v. Berger*, 9th Dist. No. 22800, 2005-Ohio-6987, ¶ 6. Similarly, an order concerning modification of parent rights and responsibilities is reviewed under an abuse-of-discretion standard. *Waggoner v. Waggoner*, 111 Ohio App.3d 1, 4 (9th Dist.1996). An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶57} In the trial court, Mr. Wells filed five motions to show cause and one motion to modify parental rights and responsibilities without a hearing. On appeal, he argues that the trial court dismissed these motions without an evidentiary hearing and without providing its findings or rationale for such a decision. However, a review of the transcript reveals that the trial court addressed the pending motions at the April 20, 2010 hearing. The trial court offered to schedule another hearing on the remaining motions. Mrs. Wells mentioned that the divorce decree would not be final if the remaining motions were not addressed. The trial court gave the parties the option of dismissing the motions so that there would be a final divorce decree and then the parties would have the opportunity to refile the motions, or, in the alternative, preserving the issues in the decree such that there would not yet be a final divorce decree. Mr. Wells stated that he would like to preserve the motions. The trial court stated that it would prefer to have a final decree and asked the parties to refile their motions. Mr. Wells offered no objection, and instead directed the trial court's attention to objections on the exhibits.

**{¶58}** We conclude that Mr. Wells failed to preserve this argument on appeal by failing to formally object. This Court has held that "an appellate court will not consider as error any issue a party was aware of but failed to bring to the trial courts attention" at a time when the trial court might have corrected the error. *Dent*, 2002-Ohio-4522, at ¶ 6. *See also Stefano &*

*Associates*, 2008-Ohio-177, at ¶ 18 ("It is axiomatic that a litigant who fails to raise an argument in the trial court forfeits his right to raise that issue on appeal"). While a litigant who forfeits such an argument still may argue plain error on appeal, this court will not sua sponte undertake a plain-error analysis if the litigant fails to do so. *See State v. Hairston*, 9th Dist. No. 05CA008768, 2006-Ohio-4925, ¶ 11. Because Mr. Wells forfeited this issue for appeal and has not raised a claim of plain error, his first assignment of error lacks merit and is overruled.

## MR. WELLS' ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN ITS DETERMINATION OF SPOUSAL SUPPORT IN THE AMOUNT OF $20,000.00.

{¶59} In his second cross-assignment of error, Mr. Wells argues that the trial court abused its discretion in its determination of spousal support. We do not agree.

{¶60} This Court reviews a trial court's award of spousal support under an abuse of discretion standard. *Brubaker*, 2006-Ohio-1035, at ¶ 7, citing *Pauly*, 80 Ohio St.3d at 390; *Booth*, 44 Ohio St.3d at 144. An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶61} Mr. Wells argues that the trial court abused its discretion in its award of spousal support because the evidence indicates that Mrs. Wells can adequately sustain her lifestyle with the income from her property division and the temporary spousal support. He cites to *Simoni v. Simoni*, 102 Ohio App.3d 628 (8th Dist.1995) to support his contention that spousal support is not appropriate if it provides a spouse with more than he or she "needs" to sustain an "appropriate and reasonable lifestyle." However, as Mrs. Wells correctly points out in her brief, *Simoni* "was based upon the standard of need; which is no longer the standard." *Janosek v. Janosek*, 8th Dist. Nos. 91882, 91914, 2009-Ohio-3882, ¶ 31. This Court has previously noted

that the legislature amended R.C. 3105.18, effective April 11, 1991, and established "a significantly different standard for awarding spousal support, as compared with the statute it replace[d]. The new 'appropriate and reasonable' standard is broader than the old 'necessary' standard and allows the trial court more latitude." *Young v. Young*, 9th Dist. No. 93CA005554, 1993 WL 548765, *2 (Dec. 29, 1993). Because *Simoni* was based upon the previous standard, *Simoni* is inapplicable to the case at bar.

{¶62} Other than criticizing the lower court for granting spousal support in an amount that he feels is greater than Mrs. Wells' needs, Mr. Wells fails to offer an argument or justification for reducing the amount of the obligation. "Disagreeing with the trial court's conclusions, without showing the unreasonableness, arbitrariness, or unconscionability of the trial court's actions, is insufficient to demonstrate an abuse of discretion." *Fisher v. Fisher*, 3d Dist. No. 7-01-12, 2002 WL 444904, *8 (Mar. 22, 2002).

{¶63} A trial court is bound to consider all the factors contained in R.C. 3105.18(C)(1) in awarding spousal support; however the amount of spousal support remains within the discretion of the trial court. *Moore v. Moore*, 83 Ohio App.3d 75, 78 (9th Dist.1992). The trial court's entry expressly states that after considering the length of the marriage, the education of the parties, the ability to earn income, the necessary expenses of the parties, Mr. Wells' ability to pay, and considering the lifestyle previously enjoyed by the parties, and after reviewing all of the other factors set forth in R.C. 3105.18(C)(1), in addition to the monies already paid by Mr. Wells, spousal support in the amount of $20,000 for a period of seventy-two months would be appropriate. The record does not indicate that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore*, 5 Ohio St.3d at 219.

{¶64} Mr. Wells' second assignment of error is overruled.

III.

{¶65} Mrs. Wells' sixth assignment of error is sustained. Her remaining assignments of error are overruled. Mr. Wells' assignments of error on cross-appeal are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
CARLA MOORE
FOR THE COURT

CARR, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

RICHARD A. RABB and CHARLES J. PAWLIKIEWICZ, Attorneys at Law, for Appellant/Cross-Appellee.

JOSEPH G. STAFFORD and GREGORY J. MOORE, Attorneys at Law, for Appellee/Cross-Appellant.

PATRICK H. LEWIS, Attorney at Law, for Goodyear Tire & Rubber Co.