[Cite as *Ward v. Ward*, 2012-Ohio-5658.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| MELISSA M. WARD | | C.A. No.     26372 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| SHAINE E. WARD | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.     2007-07-2217 |

DECISION AND JOURNAL ENTRY

Dated: December 5, 2012

CARR, Judge.

{¶1}    Appellant Shaine Ward appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms in part, reverses in part, and remands.

I.

{¶2}    Shaine Ward ("Husband") and Melissa Ward ("Wife") were married on July 23, 2005. They had a child ten months later. On July 12, 2007, Wife filed a complaint for divorce. Around the same time, Wife obtained a civil protection order against Husband. Husband answered Wife's complaint and counterclaimed for divorce. Soon thereafter, the magistrate issued temporary orders including the following: Wife was named residential parent and legal custodian of the child, Husband was granted supervised visitation, Husband was to pay temporary spousal support in the amount of $500 per month and child support in the amount of $613.34 per month, and Wife was granted exclusive use of the marital residence and had to pay

the mortgage and utilities. Husband subsequently proposed a shared parenting plan, and Wife opposed it.

{¶3} The parties' divorce action quickly became highly contentious, particularly after Husband's attorney withdrew from further representation. Nevertheless, in January 2009, the trial court adopted two agreed orders: (1) an agreed interim order holding the previous temporary child and spousal support orders in abeyance and ordering Husband to pay child support in the amount of $478.91 per month, and (2) a shared parenting plan.

{¶4} The hearing on the parties' divorce was scheduled and continued multiple times until the matter was heard on April 7, 2009. Prior to that hearing, however, the trial court ordered that the marital premises be listed for sale. Subsequent to the divorce hearing, but before the domestic relations court issued a judgment decree of divorce, Husband filed a plethora of motions, including numerous contempt motions and various "emergency" motions relating to occupancy of the marital home, payment of medical bills, and modification of child and spousal support. In June 2009, the trial court dismissed several motions because the issues would be resolved by the final decree. It scheduled the remaining motions for hearing. Husband continued to file various motions, including numerous "emergency" motions and multi-branch contempt motions. In January 2010, after again noting that the divorce action had been heard but that the decree had not yet been filed, the trial court dismissed "all unaddressed motions filed after April 7, 2009[,]" except for Husband's numerous contempt motions.

{¶5} On January 25, 2010, Wife filed a motion to suspend Husband's parenting time based on Husband's alleged refusal to return the child, escalating irrational and dangerous behavior, and disregard for the terms of a domestic violence civil protection order issued in favor of Wife against Husband on December 15, 2009. The domestic relations court issued an

emergency ex parte order on January 27, 2010, suspending Husband's parenting time pending further order after a hearing scheduled for April 5, 2010. On January 28, 2010, Husband filed an emergency motion for parenting time with the child pursuant to the terms in the parties' shared parenting plan. The hearing scheduled for April 5, 2010, was twice continued. On July 13, 2010, the trial court approved an agreed order granting parenting time for Husband on Wednesday evenings and alternating weekends. All other pending motions were resolved on the merits or dismissed within the month.

{¶6} On September 20, 2010, the domestic relations court issued what purported to be the parties' final decree of divorce. Husband appealed from the decree, but this Court dismissed the appeal by journal entry after concluding that the decree was not a final, appealable order, as it had not resolved all matters involved in the dispute. *Ward v. Ward*, 9th Dist. No. 25649 (Nov. 19, 2010). Specifically, this Court concluded that the trial court failed to determine the status (separate or marital) and fully divide all property.

{¶7} Before the domestic relations court issued a subsequent divorce decree, the court approved an agreed order that terminated the shared parenting plan, designated Wife as the residential parent, established a parenting time schedule for Husband, and maintained "all other [o]rders * * * in full force and effect." As the agreed order did not discuss child support, the parties presumably intended to maintain the prior child support order. Husband appealed from the agreed order. This Court, concluding that the order was merely a temporary, pre-decree order, dismissed the appeal by journal entry. *Ward v. Ward*, 9th Dist. No. 25671 (Mar. 16, 2011).

{¶8} On March 2, 2012, the domestic relations court issued a "Decree of Divorce (Nunc Pro Tunc)." Husband filed an appeal in which he raises five assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ISSUED A JUDGMENT ENTRY NUNC PRO TUNC ON MARCH 2, 2012 TO CORRECT THE RULING BY THIS COURT THAT IT HAD FAILED TO ISSUE FINAL APPEALABLE ORDER IN ITS JUDGMENT ENTRY OF SEPTEMBER 20, 2010.

{¶9} Husband argues that the trial court erred by issuing the March 2, 2012 divorce decree as a nunc pro tunc entry.

{¶10} This Court concluded that the divorce decree issued on September 20, 2010, was not a final order because it failed to dispose of all relevant property. The domestic relations court captioned the March 2, 2012 decree a nunc pro tunc entry "to correct this mistake and to resolve all matters that were in dispute and not previously ruled on in the prior decree of divorce."

{¶11} "'[N]unc pro tunc entries are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided or what the court intended to decide.'" *Berthelot v. Berthelot*, 154 Ohio App.3d 101, 2003-Ohio-4519, ¶ 29 (9th Dist.), quoting *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164 (1995). "Nunc pro tunc entries are not appropriate to effect substantive changes in judgments; rather, they are manifestations of courts' 'inherent authority to correct errors in judgment entries so that the record speaks the truth.'" *Ferraro v. B.F. Goodrich Co.*, 149 Ohio App.3d 301, 2002-Ohio-4398, ¶ 9 (9th Dist.), quoting *State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 100 (1996).

{¶12} The plain language of the March 2, 2012 divorce decree indicates that the domestic relations court was deciding issues it had not previously decided. Such matters were not properly disposed in a nunc pro tunc entry. However, because our resolution of subsequent

assignments of error necessitates remand to the trial court, Husband's first assignment of error is rendered moot. *See Berthelot* at ¶ 29.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN DENYING THE ADMISSIBILITY OF EVERY EXHIBIT PRESENTED BY [HUSBAND.]

**{¶13}** Husband argues that the trial court abused its discretion by excluding all his exhibits. This Court disagrees.

**{¶14}** "The decision to admit or exclude evidence lies in the sound discretion of the trial court." *Jones v. Jones*, 9th Dist. No. 25468, 2011-Ohio-4393, ¶ 7. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

**{¶15}** The trial court considered the admissibility of 27 of Husband's exhibits. It concluded that 7 exhibits were not submitted. It ruled that the remaining 20 exhibits were not admissible for various reasons, e.g., because the exhibit was not relevant, not identified, or already included as part of the record. On appeal, Husband only challenges with any specificity the exclusion of Exhibits L and M, arguing that those exhibits were properly identified. Otherwise, he failed to cite to the record in support of this assignment of error as required by App.R. 16(A)(7). We have frequently recognized that "'an appellant's assignment of error provides this Court with a roadmap to guide our review.'" *Akron v. Johnson*, 9th Dist. No. 26047, 2012-Ohio-1387, ¶ 3, quoting *Taylor v. Hamlin-Scanlon*, 9th Dist. No. 23873, 2008-Ohio-1912, ¶ 12, citing App.R. 16(A). We decline to chart our own course when, as in this case,

the appellant has failed to provide any guidance. App.R. 12(A)(2); *see also Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934 (May 6, 1998) (holding that "if an argument exists that can support [an] assignment of error, it is not this court's duty to root it out.") Accordingly, this Court will consider the propriety of the exclusion solely of Exhibits L and M.

{¶16} Exhibit L was a 46-page document captioned "Documents of Outstanding Debts at the Time of Trial." The exhibit included a copy of a mortgage statement, purported bill and account histories printed from various web sites, unauthenticated copies of account statements and a residential lease agreement, and unauthenticated copies of various motions, orders, and proposed orders regarding the case before the trial court. When Husband discussed Exhibit L at the divorce hearing, the confusion of the parties and the court was apparent. Husband vaguely referenced information contained in the exhibit, while Wife's attorney and the trial court repeatedly asked for clarification regarding the documents to which he was referring. Given the voluminous nature of the exhibit and Husband's failure to address it with any clarity, this Court concludes that the trial court did not abuse its discretion by excluding Exhibit L.

{¶17} Exhibit M was a 113-page document captioned "Summary of Father's Premarital Residence Located at 50 Scupper Lane, Northfield, OH 44067." It included unauthenticated copies of tax records and copies of journal entries with attachments filed in various cases in other courts. At the divorce hearing, Husband referenced Exhibit M but proceeded to discuss how he acquired and transferred one-half interest in the property to Wife, the improvements he made to the property, and how he wanted the opportunity to have the home without any clear reference to any of the documents in the exhibit. Again, in the absence of Husband's clear reference to any document in the exhibit or how any documents related to his assertions, this Court concludes that the trial court did not abuse its discretion by excluding Exhibit M.

{¶18} Husband's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT THE COURT'S RULING WAS NOT INTENDED TO VACATE OR MERGE ANY ORDERS ISSUED SUBSEQUENT TO TRIAL[.]

{¶19} Husband argues that the trial court erred by ordering that no orders issued subsequent to the April 7, 2009 divorce hearing were vacated or merged into the decree. This Court agrees.

{¶20} Husband assigns this error specifically as it relates to the trial court's adoption of the October 8, 2010 agreed order terminating the parties' shared parenting plan, delimiting Husband's parenting time, and establishing procedures for exchanges of the child. Neither party signed the agreed order. While Wife's attorney approved the order, Husband's attorney did not. Husband attempted to appeal the agreed order, but this Court dismissed his appeal after concluding that the order was merely a temporary pre-decree order.

{¶21} The Supreme Court of Ohio has held that "[i]n a domestic relations action, interlocutory orders are merged within the final decree, and the right to enforce such interlocutory orders does not extend beyond the decree, unless they have been reduced to a separate judgment or they have been considered by the trial court and specifically referred to within the decree." *Colom v. Colom*, 58 Ohio St.2d 245 (1979), syllabus. The *Colom* court reasoned: "[W]e believe that the extension of the merger doctrine to extinguish the right of further action on interlocutory orders that have not been included within the decree or reduced to judgment serves the salutary purpose of consolidating the adjudicated rights and duties of the parties into a single document, and prevents the resurrection of the interlocutory matters after the decree. Unless later successfully challenged, it may be reasonably presumed that the trial court

in entering the final decree took into consideration all that has transpired in the matter between the parties prior to the decree." *Id.* at 248.

{¶22} In the March 2, 2012 divorce decree, the trial court ordered that the parties' shared parenting plan, originally journalized on January 28, 2009, was in the best interest of the child. It, therefore, adopted the shared parenting plan as the order of the court, attaching and incorporating the plan by reference "as if completely rewritten herein." The October 8, 2010 agreed order was not referenced in the divorce decree, nor were the terms of the order specifically reduced to judgment. Nevertheless, because of the trial court's order that no post-trial, pre-decree orders were vacated or merged into the final decree, the child's custody remains ambiguous and the matter is ripe for "resurrection." In light of the potential for on-going disputes regarding the parental rights of the parties, Wife's argument that Husband's assignment of error is frivolous is not well taken. Husband's third assignment of error is sustained.

## ASSIGNMENT OF ERROR IV

> THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN DETERMINING "DURING THE MARRIAGE" CONSTITUTED MAY 16, 2003 THROUGH APRIL 7, 2009, EVEN THOUGH THE PARTIES WERE NOT MARRIED [UNTIL] JULY 23, 2005.

{¶23} Husband argues that the domestic relations court erred by determining that the period encompassing "during the marriage" ran from May 16, 2003, through April 7, 2009, despite the fact that the parties were not married until July 23, 2005. This Court agrees.

{¶24} R.C. 3105.171 addresses the division of marital and separate property. Marital property consists of property acquired by either spouse "during the marriage." R.C. 3105.171(A)(3)(a). "During the marriage" generally means "the period of time from the date of the marriage through the date of the final hearing * * *." R.C. 3105.171(A)(2)(a). However, "[i]f the court determines that the use of either or both of the dates specified in division (A)(2)(a)

of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, 'during the marriage' means the period of time between those dates selected and specified by the court." R.C. 3105.171(A)(2)(b).

{¶25} Generally, this Court reviews the trial court's determination pursuant to R.C. 3105.171(A)(2)(b) regarding the period constituting "during the marriage" for an abuse of discretion. *Wells v. Wells*, 9th Dist. No. 25557, 2012-Ohio-1392, ¶ 10. "'However, an appellate court considers an appeal from a trial court's interpretation and application of a statute de novo.'" *Giusti v. Akron Gen. Med. Ctr.*, 178 Ohio App.3d 53, 2008-Ohio-4333, ¶ 12 (9th Dist.), quoting *State v. Standen*, 173 Ohio App.3d 324, 2007-Ohio-5477, ¶ 7 (9th Dist.). Accordingly, because this assignment of error challenges the trial court's interpretation and application of R.C. 3105.171, we review the issue de novo.

{¶26} The trial court determined that May 16, 2003, constituted the first day of the period "during the marriage" because the parties "were becoming financially entangled as if they were married" as of that date. The trial court premised this conclusion after finding that Husband bought what ultimately became the marital residence on that date, notwithstanding the fact that Wife acquired no interest in the property until Husband quit claimed a one-half interest in the property to her on July 10, 2003, in consideration of $1.00. The parties did not move into the property together until October or November 2003. Husband carried the mortgages on the property until the parties jointly refinanced the property in June 2004. Although improvements were made to the property prior to the parties' cohabitation, the trial court surmised in the absence of evidence in support that, because both parties were "gainfully employed and * * * engaged in this project[,] [i]t is just as likely that both of their monies were utilized to improve

the property." Moreover, the trial court found that the parties were financially intertwined as though married because Wife was named as the statutory agent for Ranch Road Superior Properties, LLC, which owned two apartment buildings on which only Husband made a $51,000 down payment and for which he secured a $287,000 commercial loan to finance the balance.

{¶27} The trial court erred in determining that May 16, 2003, constituted the first date of the period "during the marriage." A determination that a marriage commenced prior to the ceremonial date of the marriage is improper and would effectively resurrect common law marriages after the legislature abolished them in 1991. *See* R.C. 3105.12(B). Although the Eighth District Court of Appeals recently reached the opposite conclusion in *Bryan v. Bryan*, 8th Dist. No. 97817, 2012-Ohio-3691, ¶ 23, this Court's finds its reasoning unpersuasive. The *Bryan* court noted that both R.C. 3105.12 and R.C. 3105.171 became effective in 1991, and that "R.C. 3105.171(A)(2) can only be used when a legally married couple seeks to terminate their marriage." *Id.* at ¶ 23. We are unclear how this lends support for the conclusion that the trial court may select a date prior to the ceremonial date of the marriage to determine the period "during the marriage" when the parties' marriage necessarily only existed as of the ceremonial date. Only in the case of a common law marriage established and not terminated prior to the date of the statute abolishing common law marriages would a date other than the ceremonial date of the marriage be a viable choice.

{¶28} This Court considered a trial court's determination of the period "during the marriage" as encompassing a date prior to the ceremonial marriage in only one prior case. *Klausman v. Klausman*, 9th Dist. No. 21718, 2004-Ohio-3410. In that case, the trial court found that the parties lived together one year prior to marriage and made a down payment on a home during that time with money received by the future husband from a sale of stock. The trial court,

therefore, determined that the stock should be considered a marital asset for division of property purposes. This Court noted that the trial court had not enunciated any reasons why equity required selecting a date prior to the ceremonial marriage for purposes of determining the period "during the marriage." *Id.* at ¶ 50. We concluded that the trial court's determination on the matter was not proper. *Id.* at ¶ 51. Although we did not expressly consider whether a trial court may ever select a date prior to the ceremonial date of the marriage for purposes of determining the period "during the marriage," we do so now and conclude that, where no valid common law marriage exists, it would never be either equitable or legal to select a date prior to the date of the ceremonial marriage for purposes of determining the period "during the marriage." To hold otherwise and allow a trial court to fabricate a marriage based on business dealings, as in this case, is unnecessary to effect equity. Courts routinely extricate the financial interests of unmarried business partners and the like. There is no undue hardship on the domestic relations court to do so relative to married parties. Property owned by the parties prior to the date of marriage constitutes separate property. In cases where a division of marital property would not achieve equity, the trial court may make a distributive award of property to one spouse and secure that award by a lien on the other spouse's separate property. R.C. 3105.171(D)/(E). Accordingly, this Court adopts a bright line rule that a trial court errs when it selects a date prior to the date of the ceremonial marriage to determine the period "during the marriage." We clarify that this does not mean that the trial court cannot, if equity dictates, select a date after the ceremonial marriage as the date that commences the period "during the marriage" for the purpose of determining marital property. However, because the domestic relations court in this case chose a date prior to the ceremonial marriage date, it erred in determining the period "during the marriage."

{¶29}   Husband's fourth assignment of error is sustained and the matter is remanded for further consideration and determination of the period "during the marriage."

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT ERRED AS A MATTER OF FACT AND ABUSED ITS DISCRETION IN NOT ACCOUNTING FOR SEPARATE MARITAL FUNDS USED BY [HUSBAND] IN THE PURCHASE OF REAL PROPERTY REFERRED TO BY THE TRIAL COURT AS RANCH ROAD PROPERTIES.

{¶30}  Husband argues that the domestic relations court erred by not accounting for his separate property used to finance the purchase of the Ranch Road properties.  Based on our resolution of the fourth assignment of error, Husband's fifth assignment of error is not ripe for consideration.

III.

{¶31}  Husband's second assignment of error is overruled.   The third and fourth assignments of error are sustained.  We decline to address the first and fifth assignments of error. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and the cause remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

 

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶32} I concur in the opinion of the majority as it relates to assignments of error 1, 2, 3 and 5. I concur only in the result reached by the majority as to assignment of error number 4. The majority has launched out to paint a bright line regarding a legal proposition that was never briefed by the parties. It is not necessary to our decision of the matter before us to take such a position. Rather, I would review the trial court's decision regarding the term of the marriage as a factual matter and apply the abuse of discretion standard, as we did in *Klausman*, which is factually similar. *See also Wells v. Wells*, 9th Dist. No. 25557, 2012-Ohio-1392, ¶ 19; *Raykov v. Raykov*, 9th Dist. No. 26107, 2012-Ohio-2611, ¶ 28; *Budd v. Budd*, 9th Dist. No. 25469, 2011-Ohio-565, ¶ 15. On the authority of *Klausman*, I would conclude that the court abused its discretion because the record did not contain evidence to support the use of May 16, 2003, (the date Husband purchased the property) as the date of the commencement of the marriage. I

would leave the issue of the interplay between common law marriage and R.C. 3105.171(D)/(E) to a case where the issue is raised and briefed by the parties.

DICKINSON, J.
CONCURRING.

{¶33} I concur in judgment and all of the lead opinion except the references to an abuse of discretion standard of review in connection with the second assignment of error. The exhibits about which Mr. Ward has complained are inadmissible hearsay, and the trial court would have erred as a matter of law if it had received them. It did not have discretion to receive or reject them. Mr. Ward's second assignment of error is correctly overruled as a matter of law.


APPEARANCES:

LARRY D. SHENISE, Attorney at Law, for Appellant.

WILLIAM J. DETWEILER, Attorney at Law, for Appellee.