[Cite as *State ex rel. Nix v. Bath Twp.*, 2011-Ohio-5636.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO, ex rel.
DAVID M. NIX, et al.

    Appellee

    v.

BATH TOWNSHIP, et al.

    Appellant

C.A. No.    25633


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2009-08-6109

DECISION AND JOURNAL ENTRY

Dated: November 2, 2011

WHITMORE, Judge.

{¶1}    Defendant-Appellant, Bath Township, appeals from the order of the Summit County Court of Common Pleas, denying its motion for summary judgment on the issue of governmental immunity. This Court affirms.

I

{¶2}    Plaintiff-Appellees, David and Sarah Nix ("the Nixes") and Robert and Celeste Eller ("the Ellers"), own adjoining lots located on Treecrest Drive in the Yellow Creek Woods Subdivision of Bath Township. One of the two water collection systems on Treecrest Drive drains water from the road and other properties through a pipe, which discharges the water at the boundary point of the Nixes' and the Ellers' properties. As a result of the water discharging, both properties sustained erosion damage. In 1989, Bath Township added to the existing water collection system, which had been installed by the County in the 1960s. Specifically, Bath Township installed additional drainage facilities, adding a catch basin, grating, extended

underground drainage piping, and top soil to help repair the erosion. Bath Township did not take any further action on the properties after the 1989 installation occurred.

{¶3} During the 1990s, David Nix made several repairs and changes to the drainage facilities that Bath Township installed. In 1993, a pipe that Bath Township had installed pulled away and Nix reconnected it. In 1996, the same pipe pulled away again and, when he could not reconnect it because it had filled with sand and debris, Nix bought a new pipe, positioned it over the old pipe, and connected it to the system. He also filled in the open drainage ditch near the road, blocked the windows of the catch basin in the same area, built two weirs to slow the flow of water, added French drains, and installed both underground perforated pipe in the filled-in ditch and an alternate inlet that drained into the covered catch basin. Bath Township was unaware of the work that David Nix performed.

{¶4} In 2009, the Nixes and the Ellers discovered that a portion of the drainage pipe that Bath Township had installed in 1989 had torn apart. The tear was situated above the point at which the extension pipe previously had disconnected and been replaced by Nix. As a result of the break in the pipe, water flowed from that portion of the pipe rather than being carried to its intended termination point. The Nixes' and the Ellers' properties sustained serious erosion damage due to the breakage of the pipe. The Nixes and the Ellers contacted Bath Township after the pipe tore and asked it to remedy the tear, but Bath Township declined to take any action to remedy the tear.

{¶5} On August 18, 2009, the Nixes and the Ellers brought suit against Bath Township, alleging negligence, trespass, and nuisance and seeking a declaratory judgment, writ of mandamus, and injunction. Bath Township ultimately sought an award of summary judgment on the grounds that all of the foregoing claims were barred both by the statute of limitations and its

own governmental immunity. The parties filed stipulations of fact with the court on October 4, 2010. On October 8, 2010, the Nixes and the Ellers filed a memorandum in opposition to Bath Township's motion for summary judgment. The Nixes and the Ellers also filed their own motion for summary judgment, asking the trial court to declare that Bath Township had an easement on their properties "in the area of the storm water drainage system." On October 13, 2010, the trial court granted the Nixes and the Ellers' motion and concluded that Bath Township had an easement on their properties and/or that they had dedicated a portion of their properties for public use. On October 14, 2010, the trial court denied Bath Township's motion for summary judgment and concluded that it was not immune from suit.

{¶6} Bath Township now appeals from the trial court's order and raises three assignments of error for our review. For ease of analysis, we consolidate two of the assignments of error.

## II

### Assignment of Error Number One

"THE TRIAL COURT ERRED IN DENYING BATH TOWNSHIP THE BENEFIT OF IMMUNITY PURSUANT TO R.C. 2744.02(A) WHERE NONE OF THE EXCEPTIONS OUTLINED IN R.C. 2744.02(B) APPLY."

### Assignment of Error Number Two

"THE TRIAL COURT ERRED IN DETERMINING THAT BATH TOWNSHIP WAS NOT IMMUNE IN FINDING THAT BATH TOWNSHIP'S ACTIONS WERE NOT DISCRETIONARY UNDER R.C. 2744.03."

{¶7} In its first and second assignments of error, Bath Township argues that the trial court erred by denying its motion for summary judgment as to the Nixes and the Ellers'

negligence and nuisance claims.[1]  Specifically, Bath Township argues it was immune from liability on those claims.  We disagree.

{¶8}    This Court reviews an award of summary judgment de novo.  *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105.  Pursuant to Civ.R. 56(C), summary judgment is proper if:

> "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."  *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327.

The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact.  *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-93.  Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C).  Id.  Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial.  Id. at 293.  The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact.  *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735.

{¶9}    Generally, political subdivisions are immune from civil liability "for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary

---

[1] Bath Township's argument here also briefly references the Nixes and the Ellers' trespass claim. We reserve our discussion of that claim in this portion of the opinion, however, as it is the basis for Bath Township's third assignment of error.

function." R.C. 2744.02(A)(1). Certain exceptions to that immunity exist, however, as set forth in R.C. 2744.02(B). One of those exceptions provides that a political subdivision will be liable for damages caused to person or property "by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2). Accordingly, if a subdivision negligently causes damage while engaging in a governmental function its immunity remains intact, but if it does so while engaging in a proprietary function its immunity falters. *Bauer v. Brunswick*, 9th Dist. No. 11CA0003-M, 2011-Ohio-4877, at ¶5. The political subdivision then may seek to reestablish its immunity by asserting one of the defenses to liability set forth in R.C. 2744.03(A).

**Exceptions to Immunity**

{¶10} Bath Township first argues that the trial court erred by concluding that it was not entitled to retain its general grant of immunity. Bath Township avers that the Nixes and the Ellers brought suit against it on the basis of a governmental function, not a propriety one. Specifically, Bath Township argues that this case involves one of the following: (1) "[t]he regulation of the use of, and the maintenance and repair of *** aqueducts *** and public grounds"; (2) "[t]he provision or nonprovision, planning or design, construction, or reconstruction of *** a sewer system"; or (3) a flood control measure. R.C. 2744.01(C)(2)(e),(l),(r) (categorizing all three functions as governmental ones). The trial court rejected Bath Township's arguments and determined that this matter involved "[t]he maintenance, destruction, operation, and upkeep of a sewer system." R.C. 2744.01(G)(2)(d) (categorizing such maintenance as a proprietary function). The issue, therefore, is whether the court erred by concluding that the undisputed facts demonstrate that Bath Township was engaging in a proprietary function.

{¶11} We first address Bath Township's contention that it was entitled to retain its general grant of immunity because the additional drainage facilities it installed here constituted either "[t]he regulation of the use of, and the maintenance and repair of *** aqueducts *** and public grounds" under R.C. 2744.01(C)(2)(e) or a flood control measure under R.C. 2744.01(C)(2)(r). As to R.C. 2744.01(C)(2)(e), Bath Township did not offer any independent analysis as to why that subsection might apply. It simply grouped that subsection into its discussion of its immunity for sewer system design under R.C. 2744.01(C)(2)(l) and did not set forth any additional argument. As set forth, infra, we reject Bath Township's argument that R.C. 2744.01(C)(2)(l) applies here. Thus, we similarly reject its unsupported conclusion that R.C. 2744.01(C)(2)(e) applies.

{¶12} As to its argument that the drainage facilities constituted a flood control measure, Bath Township relied upon one case, *Engel v. Williams County*, 6th Dist. No. F-07-027, 2008-Ohio-3852, and a single portion of deposition testimony where a Summit County Engineer testified that the act of removing water from the roadway near the Nixes' and the Ellers' properties helped prevent flooding. There was no evidence in the record, however, that the area was prone to flooding in the least. Bath Township's own road superintendent, John Peltier, testified in his deposition that he was not aware of any road flooding issue in that area during his fifteen years as road superintendent. Further, *Engel* is wholly inapplicable to the case at hand. *Engel* involved Williams County's struggle to keep one of its county roads free from standing water and flooding, which the road frequently experienced after rainfall. *Engel* at ¶2-4. Specifically, the case revolved around the County's maintenance of a ditch that was designed to handle run-off water from the road and channel the water to an adjacent field through drains situated in the ditch. Id. at ¶17. The case hinged upon the fact that the ditch was part of a major,

ongoing flood control effort on that road and never part of any sewer system. Id. The Sixth District determined that the ditch was a flood control measure, and therefore a governmental function, because the ditch's purpose was to alleviate flooding and it was not connected to a sewer system. Id.

{¶13} Unlike *Engel*, the drainage facilities at issue here were part of a sewer system. Bath Township connected the drainage facilities to the County's existing drainage system on Treecrest Drive. Although the drainage facilities did move water that otherwise might have accumulated elsewhere, Bath Township has not pointed to any law standing for the proposition that the diversion of water, in and of itself, constitutes a flood control measure. Were it otherwise, every sewer system would be a flood control measure. Here, there is no evidence that the Treecrest Drive area had a problem with flooding. The additional drainage facilities that Bath Township installed simply carried the water collected from the County's drainage system to a lower termination point than it otherwise would have been deposited. Bath Township failed to demonstrate the existence of a genuine issue of material fact as to whether its actions constituted a flood control measure. As such, the trial court did not err by rejecting that argument.

{¶14} The only remaining subsection under which Bath Township claimed a general grant of immunity was R.C. 2744.01(C)(2)(l), which pertains to "[t]he provision or nonprovision, planning or design, construction, or reconstruction of *** a sewer system." A distinction exists between damages sustained to property as a result of a sewer system's actual design and damages sustained due to a political subdivision's failure to perform routine maintenance on the system, as designed. *Zimmerman v. County of Summit, Ohio* (Jan. 15, 1997), 9th Dist. No. 17610, at *3. A political subdivision is immune from damages caused by the negligent installation of a faulty design (a governmental function), but not from damages caused by a

failure to maintain it (a proprietary function). Compare *Dowell v. North Canton* (June 1, 1999), 5th Dist. No. 1998CA00290, at *1-3 (determining city was immune when it deviated from an originally approved design and installed a drainage system whose slope, location, and pipe size caused flooding on plaintiff's property) with *Nimishillen Twp. Trustees v. State ex rel. Groffre Investments*, 5th Dist. No. 2003CA00410, 2004-Ohio-3371, at ¶30-39 (concluding immunity did not apply to city where claim was premised upon city's failure to inspect and maintain a storm water drainage system). The Ohio Supreme Court has explained that:

> "A municipality is not obliged to construct or maintain sewers, but when it does construct or maintain them it becomes its duty to keep them in repair and free from conditions which will cause damage to private property; and in the performance of such duty the municipality is in the exercise of a ministerial or proprietary function and not a governmental function within the rule of municipal immunity from liability for tort." *Doud v. Cincinnati* (1949), 152 Ohio St. 132, 137.

A problem of design is one that, to rectify, "would require extensive redesigning and reconstructing of the system to meet current demands." *Zimmerman*, at *3. Maintenance problems are classified as those that may be remedied through repairs, inspections, the removal of obstructions, and attention to general deterioration. Id. See, also, *Duvall v. Akron* (Nov. 6, 1991), 9th Dist. No. 15110, at *2-3 (discussing distinction between design problems and maintenance problems in the context of a city sewer system).

{¶15} In its motion for summary judgment, Bath Township relied upon the deposition testimony of David Nix and Phillip Degroot, an expert retained by the Nixes and the Ellers. Nix testified that a period of heavy rain occurred in April 2009 and the lots at issue sustained erosion damage after a pipe that Bath Township installed in 1989 tore apart. Nix opined that the pipe failed because its diameter was too small to accommodate the amount and velocity of the water that flowed in the pipe during a heavy downpour. He also admitted that he made numerous

changes to the drainage system that Bath Township installed, all of which were designed to ease the stem of water. The changes included weirs that slowed down the water flow to give it time to be absorbed in the system. Further, he installed buried pipes and French drains on the sides of the catch basin that was situated between the two properties. He testified that before he made the changes, he noticed problems with the catch basin back flushing in heavy rain, spilling over, and creating runoff from the sides that caused erosion. Nix also installed buried pipes in the ditch near the road. Nix testified that his "makeshift drain" near the road would sometimes clog and allow water to flow over his lawn, but that he cleaned his drains and handled any problems himself instead of contacting Bath Township. Nix testified that he did not observe any significant erosion problems on his property from April 1996 until March 2009, when Bath Township's pipe tore apart.

{¶16} Degroot opined that the additional drainage facilities that Bath Township installed in 1989 helped to ease the erosion problems that would have occurred on the properties at issue had the County design been left intact. He further opined, however, that Bath Township incorrectly installed its pipe because it was not properly anchored given the steep slope it was on. According to Degroot, the slope of the pipe, combined with its smaller diameter, caused water to flow faster inside the pipe. The overall effect was that the pipe vibrated, loosened without being properly anchored, and ultimately fatigued and broke apart from the vibrations. Degroot specified that the pipe at issue broke at the point at which the slope changed and the vibrations would have been significant.

{¶17} Bath Township argues that all of the foregoing testimony supports the conclusion that this was an issue of negligent design, not maintenance. It argues that this case is analogous to *Dowell v. North Canton*, in which the Fifth District determined that the City was not liable for

the damages caused by the drainage system it installed. *Dowell*, at *4-5. There, the direction of the drainage pipes at issue, their location, their slope, and their diameter caused increased flooding on the property owner's land. Id., at *1-2. To alleviate the problems that the landowner experienced, the installation of a multiple pipe system was necessary. Id. The Fifth District concluded that, because the design of the system itself was the problem, the City could not be held liable for the damages its design had caused. Id., at *4-5 (classifying the problem as one of design and concluding that the City had engaged in a governmental function for which it was immune from liability). Bath Township argues that, like *Dowell*, the damage the Nixes and the Ellers experienced was a result of the slope and diameter of the drainage pipes that the City installed; a problem of design.

{¶18} Unlike the landowner in *Dowell*, however, the Nixes and the Ellers did not experience any problems on their land for several years after Bath Township installed its additional drainage facilities. In 2009, when the pipe at issue finally tore apart, it was nearly twenty years old. The ultimate conclusion of the expert, upon whose testimony Bath Township relies, was that the pipe broke due to fatigue. Even if the design that Bath Township selected caused the drainage pipe to fatigue more quickly than another design might have, it was ultimately the fatigue that caused the pipe to fail and damage the property here, not the design itself. Bath Township stipulated that it did not take any action whatsoever to inspect, to maintain, or to repair the additional drainage facilities it installed in 1989. See *Doud*, 152 Ohio St. at 137-38 (discussing political subdivision's duty to maintain and to remain diligent and protect against the deterioration and dilapidation of a sewer system). It did not point to any evidence demonstrating that a genuine issue of material fact existed with regard to the drainage problem being one of design, rather than maintenance. That is, Bath did not set forth a genuine

dispute that the damage here was caused by the design of its drainage facilities and not its failure to maintain them over a twenty-year period. See *Zimmerman*, at *2-3 (including as maintenance problems those that are redressable by way of attention to "general deterioration"). Consequently, the trial court did not err by determining that Bath Township was not entitled to a general grant of immunity. See R.C. 2744.02(B)(2) (defining one exception to general immunity as the negligent performance of a proprietary function); R.C. 2744.01(G)(2)(d) (categorizing sewer system maintenance as a proprietary function).

**Defenses to Liability**

{¶19} R.C. 2744.03 provides, in relevant part, as follows:

"[A] political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

"***

"[A] political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(3),(5).

"Routine decisions are not shielded by immunity under R.C. 2744.03(A)(3) or 2744.03(A)(5). A 'discretionary' act necessarily involves '[s]ome positive exercise of judgment that portrays a considered adoption of a particular course of conduct in relation to an object to be achieved[.]'" *Sturgis v. E. Union Twp.*, 9th Dist. No. 05CA0077, 2006-Ohio-4309, at ¶18 quoting *Addis v. Howell* (2000), 137 Ohio App.3d 54, 60.

{¶20} In asserting that it was entitled to have its immunity restored under either of the foregoing subsections, Bath Township categorizes the Nixes and the Ellers' suit as a challenge to

its discretionary decision to install additional drainage facilities. Yet, the Nixes and the Ellers do not take issue with Bath Township's decision to install the drainage facilities here. Much of the deposition testimony elicited below, including that of David Nix, supports the conclusion that the drainage facilities that Bath Township installed, when functioning properly, actually benefitted the property owners. The Nixes and the Ellers' complaint stems from Bath Township's failure to maintain the drainage facilities, not its decision to install them in 1989. Bath Township did not point to any evidence that its failure to inspect or maintain the facilities over a twenty-year period was the result of any discretionary decision. See *Sturgis* at ¶17-19; *Nimishillen Twp. Trustees* at ¶38 (concluding that township was not entitled to either defenses under R.C. 2744.03(A)(3) or (A)(5) because it "produced no evidence of upkeep or reasonable diligence in the inspection and maintenance of the system"). Compare *Shumaker v. Park Lane Manor of Akron*, 9th Dist. No. 25212, 2011-Ohio-1052, at ¶20-21 (concluding that city had defense to liability where it exercised discretion to address more pressing matters before attending to the repair at issue). As such, the trial court did not err by concluding that Bath Township could not avail itself of the defenses to immunity set forth in R.C. 2744.03(A)(3) and (A)(5).

{¶21} In sum, the trial court did not err by denying Bath Township's motion for summary judgment. Bath Township failed to demonstrate the existence of any genuine issues of material fact to show that it was immune from suit with regard to the Nixes and the Ellers' negligence and nuisance claims. As such, Bath Township's first and second assignments of error are overruled.

## Assignment of Error Number Three

"THE TRIAL COURT ERRED IN DENYING BATH TOWNSHIP THE BENEFIT OF IMMUNITY AGAINST PLAINTIFFS' TRESPASS CLAIM."

**{¶22}** In its third assignment of error, Bath Township argues that the trial court erred by denying its motion for summary judgment on the Nixes and the Ellers' claim for trespass. Specifically, it argues that trespass is an intentional tort for which a political subdivision cannot be held liable. We need not address Bath Township's argument for the reasons set forth below.

**{¶23}** In their complaint, the Nixes and the Ellers stated a claim for trespass against Bath Township based on the following assertion:

> "31. Bath Township has collected water through the Treecrest Drainage System and discharged that water through the Drainage System Extension onto a portion of the Eller Property and the Nix Property resulting in severe erosion and other damage thereto. Said conduct is in violation of Bath Township's continuing duty to manage and control the water in the Treecrest Drainage System in a manner that does not result in damage to private landowners."

The Nixes and the Ellers later moved for summary judgment and asked the court for a declaration that Bath Township had an easement on their properties, as evidenced by its placement of drainage facilities there and its continual discharge of storm water onto their properties. On October 13, 2010, the trial court granted their motion and determined that Bath Township had an express easement on the properties or, alternatively, that the portion of the properties at issue was private land dedicated to public use. The trial court relied upon the Nixes and the Ellers' desire to have the drainage facilities on their properties so long as the facilities functioned correctly. The court's decision described the easement and/or dedication as encompassing both the drainage facilities themselves and the area of land across which the collected water discharged.

**{¶24}** "A common-law tort in trespass upon real property occurs when a person, *without authority or privilege*, physically invades or unlawfully enters the private premises of another whereby damages directly ensue[.]" (Emphasis added.) *Apel v. Katz* (1998), 83 Ohio St.3d 11, 19, quoting *Linley v. DeMoss* (1992), 83 Ohio App.3d 594, 598. A theory that Bath Township

trespassed upon the Nixes and the Ellers' property would be inconsistent with the theory that it had an easement on the property or that the land was dedicated for its benefit. The Nixes and the Ellers conceded as much in their brief when they noted the following:

> "Notably, Nix/Eller asserted a trespass claim in the alternative. Nix/Eller first sought the Court to recognize an easement possessed by Bath Township, and the attendant responsibility to maintain that easement. In the alternative, *if no easement existed*, Bath Township was trespassing when it collected public water for discharge onto the lands of Nix/Eller." (Emphasis added.)

Because the trial court determined that an easement did exist, that determination eliminated the Nixes and the Ellers' specific claim for trespass here. Compare *Carter v. Orrville*, 9th Dist. No. 06CA0013, 2006-Ohio-6476, at ¶16-23 (involving claim that the scope of an easement had been exceeded); *Bell v. Joecken* (Apr. 10, 2002), 9th Dist. No. 20705, at *2-3 (involving claim for the obstruction of an existing easement).

{¶25} The trial court did not affirmatively state that Bath Township was not entitled to immunity with regard to the Nixes and the Ellers' trespass claim. Bath Township presumes that the trial court reached that conclusion because the court denied its motion for summary judgment. The court's ruling on that motion, however, focused entirely on the Nixes and the Ellers' negligence and nuisance claims, not their trespass claim. The trial court did not specifically address the status of the trespass claim. Upon our review of the record, however, that claim was resolved by virtue of the trial court's October 13, 2010 entry, which concluded that an easement and/or dedication existed. While the trial court could have been clearer, its conclusion that the Nixes and the Ellers gave Bath Township the right to enter their property is akin to a conclusion that Bath Township did not trespass there. See *Apel*, 83 Ohio St.3d at 19 (defining trespass as an unauthorized or unprivileged entry).

{¶26} The court did not deny Bath Township immunity on the trespass claim. Rather, the trial court did not reach that issue because of its ruling in response to the Nixes and the Ellers' motion for summary judgment. Unlike the court's ruling on Bath Township's motion for immunity, its ruling on the Nixes and the Ellers' motion is not immediately appealable. Should the court's ruling on the easement and/or dedication issue later prove incorrect, Bath Township's argument that it is entitled to immunity on the trespass claim could be raised. At this time, however, it is moot and we decline to address it. See App.R. 12(A)(1)(c).

### III

{¶27} Bath Township's first and second assignments of error are overruled. Its third assignment of error is moot. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
MOORE, J.
CONCUR

APPEARANCES:

DAVID G. UTLEY, Attorney at Law, for Appellant.

TODD M. RASKIN, Attorney at Law, for Appellant.

HAMILTON DESAUSSURE, JR., BLAKE R. GERNEY, and COLIN G. SKINNER, Attorneys at Law, for Appellee.