[Cite as *Lamtman v. Ward*, 2012-Ohio-4801.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

RICK L. LAMTMAN

    Appellant

    v.

BARRY M. WARD, et al.

    Appellees

C.A. No.     26156

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2011 04 2063

DECISION AND JOURNAL ENTRY

Dated: October 17, 2012

---

WHITMORE, Presiding Judge.

{¶1} Plaintiff-Appellant, Rick Lamtman, appeals from the judgment of the Summit County Court of Common Pleas, granting summary judgment to Defendant-Appellees, Barry M. Ward and Barry M. Ward Co., L.P.A. (collectively "Ward"). This Court affirms.

I

{¶2} Lamtman became a resident of Oriana House after he was convicted of an OVI offense. When he reported to Oriana House, Lamtman was assigned the top bunk of a bunk bed for the duration of his stay. On the fourth night of his stay, Lamtman "raised up" in bed, struck his head on a caged, metal fan positioned directly above his bunk, and "sw[u]ng [his] body out to get out from under [the fan]." Lamtman then lost his balance, fell from the bed, and lost consciousness when his head struck the floor. Lamtman initially refused medical treatment, but was transferred to St. Thomas Hospital the following morning when his condition deteriorated.

Lamtman required surgery to repair a hematoma and remained in the hospital for over two weeks.

{¶3}    Subsequently, Lamtman filed a civil suit in which he alleged that Oriana House and several of its agents negligently caused his injuries.  Ward represented Lamtman in his suit. The suit ended when the trial court awarded Oriana House summary judgment on the basis that no duty was owed to Lamtman because the potential hazard to which he was exposed was an open and obvious one.  Although Ward filed a notice of appeal on Lamtman's behalf, he filed the notice late and this Court dismissed the appeal as untimely.  *Lamtman v. Oriana House, Inc., et al.*, 9th Dist. No. 25351 (May 7, 2010).

{¶4}    The instant appeal stems from a legal malpractice suit that Lamtman filed against Ward.  Lamtman alleged that Ward committed malpractice while representing him in his suit against Oriana House because Ward failed (1) to seek the removal of the judge presiding over the case due to a conflict of interest, (2) to include the Summit County Sheriff's Department as a named defendant, and (3) to file a timely appeal from the trial court's summary judgment decision.  After a brief period of discovery, Ward filed a motion for summary judgment, and Lamtman filed a memorandum in opposition.  The court ultimately granted Ward's motion.  The court determined that Ward's representation of Lamtman did not cause him injury because Lamtman would not have prevailed on his underlying suit even absent any breach of duty on Ward's part.

{¶5}    Lamtman now appeals from the trial court's judgment and raises six assignments of error for our review.  For ease of analysis, we rearrange and consolidate several of the assignments of error.

II

Assignment of Error Number Two

THE TRIAL COURT COMMITTED ERROR BY FINDING THAT THE OPEN AND OBVIOUS DEFENSE WAS APPLICABLE.

Assignment of Error Number Three

THE TRIAL COURT INCORRECTLY APPLIED THE OPEN AND OBVIOUS DEFENSE AS A MATTER OF LAW IN THAT THE ATTENDANT CIRCUMSTANCES ESTABLISHED A GENUINE ISSUE OF MATERIAL FACT ON WHETHER THE CONDITION THAT CAUSED APPELLANT'S INJURY WAS OPEN AND OBVIOUS.

{¶6} In his second and third assignments of error, Lamtman argues that the trial court erred by awarding summary judgment to Ward as it relates to the issue of whether Ward committed malpractice by not timely appealing from the court's judgment in favor of Oriana House in Lamtman's underlying negligence suit. Specifically, he argues that summary judgment was inappropriate because the open and obvious danger doctrine does not apply to residents of Oriana House and, assuming the doctrine does apply, attendant circumstances created a genuine issue of material fact. We disagree.

{¶7} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher*

*v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶8} To prevail upon a legal malpractice claim based upon negligent representation, a plaintiff must prove:

> (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss.

*Vahila v. Hall*, 77 Ohio St.3d 421 (1997), syllabus. "[T]he requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case." *Id.* at 427-428. When the theory of the plaintiff's malpractice case is that his attorney's alleged breach of duty cost him a favorable outcome, he "places the merits of the underlying litigation directly at issue." *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, ¶ 18. "In order to prove causation in these cases, the plaintiff must prove that but for the attorney's conduct, the plaintiff would have obtained a better outcome in the underlying case." *Eastminster Presbytery v. Stark & Knoll*, 9th Dist. No. 25623, 2012-Ohio-900, ¶ 7.

> All the issues that would have been litigated in the previous action are litigated between the plaintiff and the plaintiff's former lawyer, with the latter taking the place and bearing the burdens that properly would have fallen on the defendant in the original action. Similarly, the plaintiff bears the burden the plaintiff would have borne in the original trial * * *.

*Id.*, quoting Restatement of the Law 3d, Law Governing Lawyers 390, Section 53, Comment b (2000). "In proving what was lost, the plaintiff must show what would have been gained." *Paterek v. Petersen & Ibold*, 118 Ohio St.3d 503, 2008-Ohio-2790, ¶ 37.

{¶9} Lamtman's malpractice claim placed the merits of his underlying case directly at issue because he argued that Ward's alleged malpractice "prevent[ed] [him] from making any recovery against those persons or entities that [] were responsible for causing the injuries that were the subject of the personal injury action." As such, to establish proximate cause in this case it was necessary for Lamtman to prove that, absent Ward's alleged malpractice, "the result of [his] underlying case would have been different." *Eastminster Presbytery* at ¶ 8. The trial court determined that the result of Lamtman's underlying case would have been the same even absent his counsel's alleged wrongdoing. Specifically, the court concluded that Lamtman could not have recovered from Oriana House for his injuries because he sustained them as the result of an open and obvious danger.

{¶10} "In order to succeed under an action for negligence, a plaintiff must show the existence of a duty, a breach of that duty, and that the breach of that duty was the proximate cause of the plaintiff's injuries." *Galo v. Carron Asphalt Paving, Inc.*, 9th Dist. No. 08CA009374, 2008-Ohio-5001, ¶ 8. "Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, syllabus. "The rationale behind the doctrine is that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Zambo v. Tom-Car Foods*, 9th Dist. No. 09CA009619, 2010-Ohio-474, ¶ 7, quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642,

644 (1992). An open and obvious danger "obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong* at ¶ 5.

{¶11} "This Court analyzes the totality of the circumstances to determine if [a] danger is open and obvious. In doing so, we consider both the nature of the dangerous condition and any attendant circumstances that may have existed at the time of the injury." (Internal citations omitted.) *Gehm v. Tri-County, Inc.*, 9th Dist. No. 09CA009693, 2010-Ohio-1080, ¶ 8. "Open and obvious dangers are not hidden, are not concealed from view, and are discoverable upon ordinary inspection." *Zambo* at ¶ 8. "The determinative issue is whether the condition is observable." *Kirksey v. Summit Cty. Parking Garage*, 9th Dist. No. 22755, 2005-Ohio-6742, ¶ 11. "While there is no precise definition of attendant circumstances, they would include 'any distraction that would come to the attention of a [person] in the same circumstances and reduce the degree of care an ordinary person would exercise at the time.'" *Jenks v. Barberton*, 9th Dist. No. 22300, 2005-Ohio-995, ¶ 16, quoting *France v. Parliament Park Townhomes*, 2d Dist. No. 14264, 1994 WL 151658, *2 (Apr. 27, 1999).

{¶12} Lamtman first argues that the trial court erred as a matter of law by applying the open and obvious doctrine because he was not an invitee of Oriana House. According to Lamtman, because he was in custody and not at Oriana House by choice, the open and obvious doctrine did not apply to him. Courts that have considered whether the open and obvious doctrine applies in custodial situations have concluded that it does. *See, e.g., Cordell v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 08AP-749, 2009-Ohio-1555; *Solomon v. Ohio Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2003-06557, 2004-Ohio-3180; *Shotts v. Jackson Cty.*, 4th Dist. No. 00CA016, 2000 WL 33226299 (Dec. 27, 2000). In any event, the record reflects that Lamtman waived this argument in the court below.

{¶13} In his memorandum in opposition to summary judgment, Lamtman set forth a blanket proposition that he was not an invitee of Oriana House. He did not, however, set forth any argument about custodial relationships. Instead, he dedicated his argument to the existence of attendant circumstances. More importantly, in its judgment entry, the court wrote:

> The parties agree that the open and obvious doctrine applies to claims brought by injured inmates against penal institutions. However, [Lamtman] believes that the trial court failed to consider the "attendant circumstances" he encountered during his incarceration.

Lamtman does not challenge the trial court's statement that he "agree[d] that the open and obvious doctrine applie[d]." This Court will not consider Lamtman's argument that the open and obvious doctrine does not apply as a matter of law when the record reflects that Lamtman agreed to the doctrine's application in the court below. *See, e.g., David v. Edwood Dev. Co.*, 9th Dist. No. 19252, 2000 WL 46107, *3 (Jan. 12, 2000). By agreeing that the doctrine applies in custodial settings, Lamtman waived his right to assert a contrary position on appeal. *Id.*

{¶14} Next, Lamtman argues that the trial court erred when it concluded, based on the totality of the circumstances, that he suffered injuries as a result of an open and obvious danger. He avers that a genuine issue of material fact remains such that the question was one properly reserved for trial. We disagree.

{¶15} Kelly Keho testified by way of deposition that he is an employee of Oriana House and is responsible for overseeing its staff. When individuals arrive at Oriana House, the staff registers them as residents and assigns them a room and bed for the duration of their stay. Keho testified that he is responsible for the arrangement of each room at Oriana House, including where beds are located, while his staff members are responsible for assigning each resident a particular bed. According to Keho, residents must sleep in their assigned beds, but are free to request a reassignment. Moreover, Keho testified that residents are free to sleep in their assigned

bed in any manner of their choosing. Keho specified: "we don't instruct [residents] where to put the pillow. It's their bed * * *."

{¶16} In his deposition, Lamtman testified that he became a resident of Oriana House on August 6, 2007, and slept in his assigned bed for three nights without incident. Lamtman confirmed that he was assigned the top bed of a bunk bed when he reported to Oriana House and that there was a fan on the wall directly above his bed. Lamtman described the fan as approximately 18-25 inches in diameter with a mesh or metal covering around it. When asked if he had seen the fan above his bunk, Lamtman testified "[y]es, you couldn't miss it."

{¶17} Lamtman agreed that no one at Oriana House ever told him how to make his bed and that he chose to place his pillow directly beneath the fan. When he did so, Lamtman estimated that the fan was positioned approximately eight inches above his head. Lamtman testified that he was only able to sleep with his head directly below the fan because, when he placed his pillow in any other location on the bed, the fan blew air in his face and prevented him from sleeping. Lamtman admitted that he never told anyone at Oriana House that the fan was bothering him. He also never asked to be reassigned to another bed.

{¶18} On the fourth night of his stay at Oriana House, Lamtman testified that he awoke and "raised up" in bed around 2:00 to 3:00 a.m. When he did so, Lamtman's head struck the fan. He then grabbed his head with his hands and "sw[u]ng [his] body out to get out from under [the fan]." While trying to extricate himself, Lamtman lost his balance, tumbled from bed, struck his head on the floor, and lost consciousness. After he regained consciousness, Lamtman eventually returned to his bed. Lamtman testified that he lay down so that "the fan was right behind [his] head, and [he] put [his] arm up over [his] head so it wasn't blowing right in [his] face."

{¶19} Lamtman also submitted an affidavit in the court below. In his affidavit, Lamtman averred that he was "still partially asleep" when he awoke in his bed. He further stated that the room was dark at the time that he awoke because "[o]nly the hallway light was on with the door open." Lamtman averred that, due to the darkness and his disorientation as a result of waking, he forgot where he was or that he was sleeping directly beneath the fan.

{¶20} Lamtman argues that summary judgment was not appropriate because he never voluntarily chose to enter Oriana House, he had no choice in his bed assignment, and "[r]egardless of knowing the fan was there when he went to bed, the hazard was not open and obvious when he woke up in a dark room and attempted to sit up [] in a semi-conscious state and struck his head on [] the fan." We do not agree with Lamtman's argument that the trial court erred in its application of the open and obvious doctrine.

{¶21} The question of whether a plaintiff was or was not voluntarily on a landowner's premises at the time of his injury is irrelevant to an open and obvious danger analysis so long as he was lawfully there when the injury occurred. *See Armstrong*, 99 Ohio St.3d 79, 2003-Ohio-2573, at syllabus. An open and obvious danger analysis examines "the nature of the dangerous condition and any attendant circumstances that may have existed at the time of the injury." *Cottrell v. El Castillo Grande Mexican Restaurant*, 9th Dist. No. 09CA009624, 2010-Ohio-815, ¶ 9. In judging whether a defect was open and obvious, "[b]oth circumstances contributing to and those reducing the risk of the defect must be considered." *Gehm*, 2010-Ohio-1080, at ¶ 8, quoting *Stockhauser v. Archdiocese of Cincinnati*, 97 Ohio App.3d 29, 33-34 (2d Dist.1994).

{¶22} Having viewed the evidence in the record in a light most favorable to Lamtman and considering the totality of the circumstances as they existed at the time of his injury, we conclude that Lamtman sustained his injuries as the result of an open and obvious danger.

Lamtman was lawfully on Oriana House's property when he was injured, and the dangerous condition that led to his injury was observable. *See Kirksey*, 2005-Ohio-6742, at ¶ 11. Indeed, Lamtman actually observed the condition, stating in his deposition that "you couldn't miss it." *See Clark v. Burman*, 9th Dist. No. 06CA008867, 2006-Ohio-5052, ¶ 11 (danger open and obvious where plaintiff admitted that he recognized the danger at the time of the accident and acknowledged the lighting was not ideal, but nonetheless chose to subject himself to the danger). Even assuming that it was dark in Lamtman's room when he awoke and that he was "still partially asleep" when his head struck the fan, those additional facts did not create a genuine issue of material fact under the specific circumstances of this case. Lamtman chose to sleep with his head directly under the fan well before he ever fell asleep or it became dark in his room. Moreover, he slept that way for three nights without incident. *See Faith v. Lindsey*, 9th Dist. No. 24335, 2008-Ohio-6619, ¶ 11 (danger open and obvious where plaintiff had been on the premises several times and had previously exposed herself to the same danger that later injured her); *Kirksey* at ¶ 14 (no duty to warn where plaintiff "sustained her injury while traversing a parking garage entrance which she previously encountered that same day and had encountered on at least one prior occasion"). Lamtman never complained about the fan or asked to be moved to another bed. Instead, he chose to place his head directly below the fan and fall asleep. We conclude that a reasonable person in the same situation would have known about the fan and would have taken reasonable measures to "protect himself against [it]." *See Mondi v. Stan Hywet Hall & Gardens, Inc.*, 9th Dist. No. 25059, 2010-Ohio-2740, ¶ 13, quoting *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), syllabus. *See also Gehm* at ¶ 15.

{¶23} The trial court properly concluded that Lamtman sustained his injuries as a result of an open and obvious danger. Oriana House had no duty to warn Lamtman against an open

and obvious danger, so Lamtman would not have prevailed in his underlying negligence suit against it. *See Armstrong*, 99 Ohio St.3d 79, 2003-Ohio-2573, at ¶ 5. Because Lamtman failed to demonstrate that, but for Ward's representation, the result of his underlying suit against Oriana House would have been different, the trial court properly granted Ward's motion for summary judgment as it related to his alleged malpractice in the suit against Oriana House. Lamtman's second and third assignments of error are overruled.

Assignment of Error Number Four

> THE TRIAL COURT COMMITTED ERROR IN DISMISSING APPELLANT'S COMPLAINT FINDING THAT THE ORIANA HOUSE HAD NO DUTY BASED ON THE OPEN AND OBVIOUS DEFENSE WHEN ORIANA HOUSE HAD A STATUTORY DUTY OF CARE TO THE APPELLANT[.]

{¶24} In his fourth assignment of error, Lamtman argues that the trial court erred by granting Ward's motion for summary judgment because Oriana House owed him a statutory duty of care. We disagree.

{¶25} "[A]lthough the open-and-obvious doctrine can excuse a defendant's breach of a common-law duty of care, it does not override statutory duties." *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, ¶ 14. "[W]hen the General Assembly has enacted statutes the violations of which constitute negligence per se, the open-and-obvious doctrine will not protect a defendant from liability." *Id.* at ¶ 15. *Accord Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, ¶ 23-25.

{¶26} The trial court never addressed the issue of whether Oriana House violated a statutory duty of care that it owed to Lamtman because Lamtman never raised the argument in the court below. "When reviewing arguments on appeal, this Court cannot consider issues that are raised for the first time on appeal." *Carnegie Cos., Inc. v. Summit Properties, Inc.*, 9th Dist. No. 25622, 2012-Ohio-1324, ¶ 8, quoting *Harris v. Akron*, 9th Dist. No. 24499, 2009-Ohio-

3865, ¶ 9. Lamtman could have, but did not, raise this issue at the trial court level. Consequently, we will not reach the merits of his argument on appeal. *Harris* at ¶ 10. Lamtman's fourth assignment of error is overruled.

Assignment of Error Number Five

THE TRIAL COURT COMMITTED ERROR IN FINDING THAT THE SUMMIT COUNTY SHERRIFF (sic) DEPARTMENT HAD IMMUNITY UNDER OHIO R.C. §2744.02(B)(4) IN THAT THE ORIANA HOUSE IS A PRIVATE FACILITY AND NOT A BUILDING USED IN CONNECTION WITH THE PERFORMANCE OF A GOVERNMENTAL FUNCTION.

Assignment of Error Number Six

THE TRIAL COURT COMMITTED ERROR IN FINDING THAT THE SUMMIT COUNTY SHERIFF WAS NOT RECKLESS AS A MATTER OF LAW.

{¶27} In his fifth and sixth assignments of error, Lamtman argues that the trial court erred by granting Ward's motion for summary judgment as it pertained to Ward's alleged misconduct in not naming the Summit County Sheriff's Department as a defendant in Lamtman's underlying negligence suit. Specifically, he argues that the Sheriff's Department and/or its deputies were not immune from liability for his injuries.

{¶28} We incorporate the summary judgment standard of review set forth in Lamtman's second and third assignments of error. "The Sheriff's Department is a political subdivision pursuant to R.C. 2744.01(F)." *Kendzierski v. Carney*, 9th Dist. No. 22739, 2005-Ohio-6735, ¶13. In general, political subdivisions "enjoy absolute immunity from civil suits 'for injury * * * or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.'" *Pruce v. Sleasman*, 9th Dist. No. 11CA010088, 2012-Ohio-2427, ¶ 7, quoting R.C. 2744.02(A)(1). "Certain exceptions to that immunity exist * * * as set forth in R.C.

2744.02(B)." *State ex rel. Nix v. Bath Twp.*, 9th Dist. No. 25633, 2011-Ohio-5636, ¶ 9. If no exception to immunity exists, the political subdivision is entitled to summary judgment on immunity grounds. *Wolford v. Sanchez*, 9th Dist. No. 05CA008674, 2005-Ohio-6992, ¶ 31.

{¶29} Lamtman argues that the Sheriff's Department was not entitled to immunity for the activities it performed at Oriana House because Oriana House is a privately owned and operated facility. Relevant to this appeal, R.C. 2744.02(B)(4) provides that:

> political subdivisions are liable for injury * * * to person * * * that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, *but not including jails, places of juvenile detention, workhouses, or any other detention facility*, as defined in section 2921.01 of the Revised Code.

This Court previously has recognized that Oriana House "operates a detention facility, which constitutes a 'governmental function.'" *Weber v. Oriana House, Inc.*, 9th Dist. No. 17162, 1995 WL 623068, *4 (Oct. 25, 1995). Because Oriana House is a detention facility within the meaning of R.C. Chapter 2744, the Sheriff's Department, a political subdivision, would not have been liable to Lamtman for the injury he suffered while on the grounds of Oriana House. R.C. 2744.02(B)(4). The trial court correctly concluded that the Sheriff's Department would have been immune from the negligence suit Lamtman claims his former counsel should have brought against it. The court did not err by finding in Ward's favor on this issue.

{¶30} Lamtman also argues, however, that one or more deputies from the Sheriff's Department might not have been immune from suit. The immunity that shields a political subdivision generally extends to its employees, but lapses if the "employee's acts or omissions were malicious, in bad faith, or wanton or reckless." *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, ¶ 17. *Accord* R.C. 2744.03(A)(6)(b). This Court has recognized that

"showing recklessness is subject to a high standard." *Rankin v. Cuyahoga Cty. Dept. of Children and Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, ¶ 37. "'[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.' Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury." *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356 (1994), quoting *Roszman v. Sammett*, 26 Ohio St.2d 94, 96-97 (1971).

{¶31} Lamtman argues that one or more deputies of the Sheriff's Department engaged in reckless behavior when they "forc[ed] [him] to sleep eight inches from an operating fan." As this Court has previously held:

> Oriana House is not subject to the direct control or supervision of [] the County of Summit * * *. Oriana House is governed by its own internal constitution and code of regulations. Full management authority is vested in the Board of Trustees. * * * The Board has sole responsibility for labor policies, hiring decisions, salaries, capital improvements, and program contents. *No Summit County * * * official oversees day-to-day operations*.

(Internal citations omitted and emphasis added.) *Weber*, 1995 WL 623068, at *5. Lamtman failed to point to any evidence to demonstrate that any of the deputies assigned to Oriana House forced him to sleep below the fan located above his bed. Kelly Keho, a supervisor at Oriana House, testified that he is responsible for the arrangement of each room at Oriana House, including where beds are located, while his staff members are responsible for assigning each resident a particular bed. He testified that it would be his responsibility to make any necessary changes to the structure of any room at Oriana House, including the locations of the beds.

{¶32} As to the function of the deputies at Oriana House, both Keho and Deputy Matamba Kaalima testified to that effect. Keho stated that the deputies assigned to Oriana House are responsible for building security, such as routinely performing safety counts of the residents.

Deputy Kaalima testified that Oriana House deputies are responsible for maintaining security and ensuring the care, custody, and control of the residents. He specified that the deputies make sure that residents follow the rules and regulations of Oriana House, perform routine head counts of the residents, and facilitate releases from the facility, but have nothing to do with bed assignments or the configuration of the various beds at the facility. Deputy Kaalima testified that he would need to request that beds be rearranged if he felt there was "a security issue." He explained that he might request for a bed to be moved if it blocked the entranceway to a room such that it posed a safety risk if a fire broke out. If a resident seeks a bed assignment, Deputy Kaalima testified, they speak with a member of the Oriana House staff.

{¶33} Apart from the fact that there was no evidence that deputies at Oriana House were in any way responsible for Lamtman's bed assignment, we do not agree with Lamtman that any reasonable person would have concluded that his bed assignment itself would have "in all probability result[ed] in [his] injury." *Fabrey*, 70 Ohio St.3d at 356, quoting *Roszman*, 26 Ohio St.2d at 96-97 (perversity defined). Lamtman chose to sleep with his head directly under the fan above his bed. No one instructed him to do so. He slept that way for three nights and never requested a reassignment. Even if one or more deputies were in some way negligent under the facts of this case, Lamtman failed to prove that any deputies were reckless. *See Rankin*, 118 Ohio St.3d 392, 2008-Ohio-2567, at ¶ 37 (recklessness distinguished from mere negligence). Consequently, the deputies were entitled to the general cloak of immunity afforded their employer, the Summit County Sheriff's Department. *See Cramer*, 113 Ohio St.3d 266, 2007-Ohio-1946, at ¶ 17. The trial court did not err by concluding that Ward was entitled to summary judgment on the issue of immunity. Lamtman's fifth and sixth assignments of error are overruled.

Assignment of Error Number One

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT THE RIGHT TO ENGAGE IN DISCOVERY AS PROVIDED UNDER THE OHIO RULES OF CIVIL PROCEDURE.

{¶34} In his first assignment of error, Lamtman argues that the court abused its discretion by staying discovery pending the resolution of Ward's motion for summary judgment. We disagree.

{¶35} "A trial court enjoys broad discretion in the regulation of discovery proceedings." *Wells v. Wells*, 9th Dist. No. 25557, 2012-Ohio-1392, ¶ 51. It is within a court's discretion to refuse to consider a motion for summary judgment "until sufficient discovery may be had" or to refuse a request for a continuance and consider the motion. *Wayne Cty. Natl. Bank v. CFP Leasing Ltd. Partnership*, 9th Dist. No. 02CA0058, 2003-Ohio-2028, ¶ 8, quoting *Tandem Staffing v. ABC Automation Packing, Inc.*, 9th Dist. No 19774, 2000 WL 727534, *2 (June 7, 2000). This Court will not reverse a trial court's decision concerning the regulation of its discovery proceedings absent an abuse of discretion. *Wayne Cty. Natl. Bank* at ¶8. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶36} Upon Ward's request, the trial court agreed to stay discovery pending its resolution of Ward's motion for summary judgment. The court did so because it determined that a finding in Ward's favor on the limited issues presented in his motion for summary judgment would resolve the suit and eliminate the need for further discovery. Lamtman argues that the court's ruling prejudiced him because he was forced to defend against summary judgment based on an "incomplete record." According to Lamtman, it was unreasonable for the court to expect

him to point to a genuine issue of material fact based on "the sparse record" that Ward had compiled in the underlying suit.

{¶37} Notably, although Lamtman alleged three different grounds for malpractice in his suit against Ward, one of those grounds was not that Ward breached a duty of care by failing to conduct adequate discovery. Further, Lamtman fails to explain how the court's ruling actually hampered his ability to respond to Ward's motion for summary judgment. *See* App.R. 16(A)(7). In his appellate brief, Lamtman only avers that the court's ruling prevented him from obtaining information about his attorney-client relationship with Ward. In his memorandum in opposition to summary judgment, Lamtman only averred that he needed to engage in further discovery to determine why his bunk bed at Oriana House was positioned the way that it was, who was responsible for placing the bed in that position, what responsibilities the various employees at Oriana House and deputies assigned there had, and why Ward believed there were reasonable grounds for his suit. The vast majority of the information Lamtman sought was already in the record, and the remaining issues only would become relevant if Lamtman overcame the application of the open and obvious danger doctrine and the immunity doctrine. Lamtman fails to explain how the additional information he sought would have helped him rebut Ward's evidence that Lamtman's injuries were the result of an open and obvious danger and that the Summit County Sheriff's Department was immune from suit. *See id.*

{¶38} When Ward initially filed his motion for summary judgment, Lamtman requested an additional three weeks to respond to the motion in order to engage in further discovery due to the "limited record" that Ward had created in the underlying suit. The court granted Lamtman's request. At the end of the three-week period, Lamtman filed his memorandum in opposition.

Lamtman never filed any additional motions for a continuance or extension of time to respond to Ward's motion for summary judgment.

{¶39} "If a plaintiff fails to establish a genuine issue of material fact as to any of the elements [of legal malpractice], the defendant is entitled to summary judgment * * *." *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, ¶ 8. As previously discussed, Lamtman's malpractice claim required him to prove as one of its elements that, but for Ward's alleged misconduct, he would have prevailed in his underlying negligence suit. *See Eastminster Presbytery*, 2012-Ohio-900, at ¶ 7. The trial court exercised its discretion to limit discovery to the issue of causation, as the parties could argue causation based upon the evidence already in the record. The evidence in the record supports the conclusion that Lamtman's injuries were the result of an open and obvious danger and both the Summit County Sheriff's Department and its deputies were immune from suit. By limiting the parties to the issue of causation, the trial court exercised control over the proceedings and avoided unnecessary discovery. Based on our review of the record, we cannot conclude that the trial court abused its discretion by staying discovery until the issue of causation could be resolved. Lamtman's first assignment of error is overruled.

III

{¶40} Lamtman's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

MOORE, J.
CONCURS.

BELFANCE, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

JEROME T. LINNEN, JR., Attorney at Law, for Appellant.

HOLLY MARIE WILSON and W. BRADFORD LONGBRAKE, Attorneys at Law, for Appellee.